### DARGAN v. McSWEEN.

1. Findings of fact by the Circuit Judge from written testimony reported to him in an equity cause, and, in part, varying from the terms of written instruments, reversed.
2. Where a deed of conveyance acknowledges the receipt of $7,400 as its consideration, and the vendee executes a bond conditioned to pay said sum of $7,400, after deducting therefrom "the full amount of any mortgage, debt, or judgment that is, or may be, a lien" upon the purchased premises, the payment of all such liens is a part of the purchase money which he contracted to pay for the land. He cannot, therefore, procure an assignment of the liens when paid by him and have them en-

forced to the prejudice of a lessee junior to the liens, but prior to this conveyance.

3. Where one purchases land as agent for his wife, to whom the conveyance is made, and then takes to himself an assignment of prior encumbrances, the amounts of which were deducted from the purchase money agreed upon, the agency still continued ; and the agent cannot enforce the encumbrances so assigned to him, to the prejudice of others who had vested rights in this land at the time of such purchase.

Before WALLACE, J., Darlington, November, 1889.

This was an action by G. W. Dargan against Julia E. Mc-Sween, J. A. McSween, Ida L. Dargan, and H. S. Rose, commenced in May, 1888. The bond and deed referred to and construed in the opinion were as follows :

THE STATE OF SOUTH CAROLINA.

Know all men by these presents, that I, G. W. Dargan, of the County of Darlington, State aforesaid, stand held and firmly bound unto J. E. McSween, of the county and State aforesaid, in the penal sum of fourteen thousand eight hundred dollars, to be paid to the said J. E. McSween, her certain attorneys, executors, and administrators, or assigns, to which payment well and truly to be made and done, I bind myself, and each and every of my heirs, executors, and administrators, jointly and severally, firmly by these presents.

Sealed with my seal, and dated at Darlington C. H. the 27th day of December, in the year of our Lord one thousand eight hundred and eighty-seven, and in the one hundred and twelfth year of the sovereignty and independence of the United States of America.

Whereas the above named J. E. McSween, in and by her deed, bearing date this 27th day of December, 1887, conveyed to Ida Dargan, of the county and State aforesaid, a certain plantation or tract of land situated in the county and State aforesaid, containing seven hundred and fifty acres, more or less, as in and by the said deed, reference being thereunto had, will more fully appear, for the expressed consideration of seven thousand four hundred dollars, and has deposited said deed in the hands of W. A. Brunson, Esq., to be delivered to the said Ida Dargan as hereinafter set forth.

And whereas, the above bound G. W. Dargan, in consideration of the premises, has agreed to pay to the said J. E. McSween, within thirty days from the date hereof, and upon the delivery of the aforesaid deed to the said Ida Dargan the consideration ex-

pressed in said deed, to wit, the sum of seven thousand four hundred dollars, after first deducting from said sum of seven thousand four hundred dollars the full amount of any mortgage, debt, or judgment that is, or may be, a lien upon the aforesaid tract of land.

Now, the condition of the above obligation is such, that if the above bound G. W. Dargan, or the above named Ida Dargan, his or her heirs, executors, and administrators, shall and do well and truly pay, or cause to be paid, unto the above named J. E. McSween, her certain attorneys, executors, administrators, or assigns, the full and just sum of seven thousand four hundred dollars, within thirty days from the date hereof, after first deducting therefrom the full amount of any mortgage, debt, or judgment that is, or may be, a lien upon the aforesaid tract of land, and upon the delivery of the aforesaid deed to said Ida Dargan, without fraud or further delay, then the above obligation to be void and of none effect, or else to remain in full force and virtue.

(Signed)          G. W. DARGAN.

Signed, sealed, and delivered in the presence of
(Signed)        W. F. Dargan.


The State of South Carolina.

Know all men by these presents, that I, J. E. McSween, of Darlington County, in the State aforesaid, in consideration of the sum of seven thousand four hundred dollars to me in hand paid, at and before the sealing of these presents by me, Ida L. Dargan (the receipt whereof is hereby acknowledged), have granted, bargained, sold, and released, and by these presents do grant, bargain, sell, and release, unto the said Ida Dargan all that certain tract or parcel of land lying, being, and situated in the County of Darlington and State of South Carolina, containing seven hundred and fifty (750) acres, more or less, and bounded on the northwest by Mill Creek and lands of Brown; on the northeast by Mill Creek and public road from Mars Bluff Ferry to Darlington C. H.; on the east by lands of Thos. Ashby; and south by lands of Geo. W. Dargan and Jno. McSween in Palmetto township, as by reference to a plat hereto attached will more fully appear. Together with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging or in any wise incident or appertaining. To have and to hold all and singular the said premises before mentioned, unto the said Mrs. Ida Dargan, her heirs and assigns forever. And I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend all and singular the said premises unto the said Mrs. Ida Dargan, her heirs and assigns, against me

and my heirs and any and all persons whomsoever lawfully claiming or to claim the same or any part thereof.

Witness my hand and seal this 27th day of December in the year of our Lord one thousand eight hundred and eighty-seven, and in the one hundred and twelfth year of the sovereignty and independence of the United States of America.

J. E. McSWEEN, [L. S.]

Signed, sealed, and delivered in the presence of

W. F. DARGAN,
W. A. BRUNSON.

The Circuit decree was as follows:

On the 27th December, 1887, the defendant, Mrs. Julia E. McSween, conveyed to Mrs. Ida L. Dargan a tract of land in Darlington County. At the time of the conveyance, there was two outstanding mortgages upon the land—one to the Dundee Mortgage Company and the other to Smith, McIver & Co. The former was executed on the 15th day of February, 1884, and given to secure five notes of even date, and due on the 1st day of November, 1884, 1885, 1886, 1887, and 1888, respectively, and ten other notes for the interest on the notes first mentioned. The other mortgage was executed on the 19th January, 1885, to secure a bond of even date, and due at a year. There was also an outstanding unsatisfied judgment, entitled Jas. Allen v. J. E. McSween, which was a lien upon the land. This was entered 14th September, 1886. The mortgages were both duly recorded.

On the 21st October, 1886, Mrs. McSween leased the premises, thus encumbered, to the defendant, H. S. Rose, for the term of five years. On the 24th February, 1888, the notes and mortgages of the Dundee Mortgage Company were duly assigned for value to the plaintiff, G. W. Dargan, and on the 3rd of April, 1888, the bond and mortgage held by Smith, McIver & Co. was duly assigned to G. W. Dargan. George W. Dargan is the husband of Mrs. Ida L. Dargan, and conducted all the negotiations preliminary to the purchase of the land, and, in fact, bought the land for his wife, to whom the deed was made. The money with which the payment to Mrs. McSween was made was the property of G. W. Dargan, he intending to make a gift of the land to his wife. At the time Rose made the contract of lease, he was actually informed of the existence of the mortgage upon it.

· The plaintiff now brings this action to foreclose the mortgages. The tenant, Rose, resists the foreclosure. He alleges that the plaintiff, as the agent of Mrs. Ida L. Dargan, agreed to pay a certain stipulated sum for the fee in the land, and that upon the execution of the contract of purchase, the amount due upon the outstanding encumbrances was deducted from this sum and reserved to pay off the liens, and only the balance of the stipulated price paid to Mrs. McSween. In reply to this allegation, plaintiff insists that he bought, and only intended to buy, Mrs. McSween's equitable right to redeem, intending to protect his purchase in the way most convenient to himself, and thus arises the main issue of fact, and upon the determination of which depends the legal principle to be applied in the case. The consideration for the purchase is stated in the bond to be seven thousand and four hundred dollars. The same sum is stated as consideration in the deed of Mrs. Dargan. At the time of the execution of the contract, the sum of $3,118.43 was paid to Mrs. McSween, that being the balance after deducting the amount of liens from the contract price of the land.

The plaintiff and W. F. Dargan (the latter being the person who drew the bond of G. W. Dargan to Mrs. McSween) explain that the sum of seven thousand four hundred dollars was stated as consideration in the bond and deed because the papers necessary to ascertain the sum agreed to be paid to Mrs. McSween could not conveniently be obtained on the day the bond and deed was executed, and the sum of $7,400 was stated as consideration therefor, it being stated at the time that the true consideration could be made to appear at any time, and that the true consideration was the balance after deducting the amount of encumbrances, and that no greater sum was agreed to be paid to Mrs. McSween. It also appears, that when the sum of $3,118.43 was paid to Mrs. McSween, the bond and deed were delivered—the bond to G. W. Dargan, and the deed to Mrs. Ida L. Dargan. From this explanation, it appears that there was no agreement that G. W. Dargan should pay Mrs. McSween the estimated value of the land, or reserve part of a contract price with which to pay the outstanding mortgages, but that it was agreed that Dargan should pay Mrs. McSween a sum to be ascertained by deducting the amount

of the encumbrances from the agreed value of the land. This view of the transaction would be strengthened by a full discussion of the evidence, and is not controverted by Mrs. McSween. This, then, being the bargain when Mrs. McSween received the sum of $3,118.48, she received all she had bargained for, and no money of her's was reserved.

If G. W. Dargan had made a contract with Mrs. McSween to pay her $7,400 for the land, and upon the execution of the contract had reserved a sum sufficient to pay off the encumbrances, with the understanding that the money should be so applied, the payment, when made, would extinguish the mortgages. It is said by Mr. Pomeroy, 2 Eq. Jur., sec. 793: "An assignment of a mortgage to a grantee of the mortgagor, unless he has expressly assumed to pay it, and thus made himself the principal debtor, does not generally create a merger, it generally being to the interest of such grantee to keep the mortgage alive," &c. If, however, he has agreed to apply the reserved fund, of course he is bound by his contract.

The case of *Heid* v. *Vreeland* (30 N. J. Eq., 591) goes a step further, and holds that a contract to pay off the mortgage by the purchaser will be implied. "When the purchaser of land encumbered by a mortgage agrees to pay a particular sum as purchase money, and, on the execution of the contract of purchase, the amount of the mortgage is deducted from the consideration, and the land conveyed, subject to the mortgage, that the purchaser is bound to pay the mortgage debt, whether he agreed to do so or not." As the contract in the case under consideration was not an agreement to pay Mrs. McSween a particular sum as purchase money for land encumbered by a mortgage, but rather an agreement to pay Mrs. McSween a sum, to be ascertained by deducting the amount of the mortgage from the estimated value of the land, the sum so paid was a complete execution of the contract. The learned judge, who delivered the opinion in the case of *Heid* v. *Vreeland, supra,* concedes that where the equitable right to redeem only is sold, and the purchase money agreed upon, represents simply the mortgagor's interest in the mortgaged premises over the mortgage debt, there is no personal liability created against the purchaser to pay the mortgage debt. This view is

supported by the case of *Belmont* v. *Coman* (22 N. Y., 438), which agrees in principle with the citation from Pom. Eq. Jur., *supra*.

It may be added, that the foregoing discussion has proceeded upon the assumption that G. W. Dargan was the grantee of the land. As has already been seen, Mrs. Ida L. Dargan holds the fee conveyed to her by Mrs. McSween, and G. W. Dargan is in no sense the agent of his wife in the transaction. The assignment of the mortgage to him, therefore, could not possibly merge the lien of the mortgage in the title.

It is therefore adjudged, that the encumbrances described in the complaint are not extinguished by their assignment to George W. Dargan. It is further adjudged and decreed, that the mortgages described in the complaint be foreclosed and the equity of redemption barred, and the land described in the mortgages sold, and the proceeds of sale be applied to the payment of the demands secured by the mortgages, and that each party pay the costs incurred by his own proceedings. It is further ordered, that plaintiff have leave to apply at the foot of this decree for all orders necessary to carry the decree into effect.

*Messrs. Boyd & Brown*, for appellants.

*Messrs. E. K. Dargan* and *W. F. Dargan*, contra, *cited* 1 Jones Mort., 738, 861; 108 U. S., 132; 115 *Id.*, 105; 2 Hill, 204; 2 New Eng. Rep., 122, 124; 18 Am. Law Rev., 347–401; 3 Cent. Rep., 76; 1 Jones Mort., pp. 866, 869, §§ 869, 776, 779; 8 S. C., 356; 16 *Id.*, 632; 30 *Id.*, 150; 2 Pom. Eq., § 793; 22 N. Y., 438.

October 1, 1890. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action to foreclose mortgages under the following circumstances: Mrs. Julia E. McSween owned a tract of land (750 acres) in Darlington County, which was encumbered as follows: February 15, 1884, mortgage to the "Dundee Mortgage and Trust Co.," to secure a debt of $2,500. January 19, 1885, mortgage to Smith, McIver & Co., to secure advances to about $1,300. September 15, 1886, judg-

ment of James Allen against J. E. McSween. December 19, 1886, Mrs. McSween had executed to H. S. Rose a lease of the land for the term of five years, commencing January 1, 1887.

About being pressed on the senior mortgage, Mrs. McSween desired to sell the land at private sale, to pay off the liens, &c. Mr. George W. Dargan desired to purchase it for his wife, Ida L., as a substitute for another tract, which belonged to his wife, but titles to which, by mistake, had been made to him. There were long negotiations as to the price to be paid for the land, principally by written correspondence, which is all printed in the "Brief."

The following is a condensed outline of the facts: The price finally agreed upon was $7,400 cash. On December 27, 1887, the parties met by agreement to consummate the trade, Mrs. McSween, with her attorney, Mr. Brunson, being present. It was found that the amount of the encumbrances could not be accurately ascertained, and that Mr. Dargan did not have the purchase money on that day; so that the parties could do no more than put the contract formally in writing, which was done. Mrs. McSween signed a deed in the usual form, with warranty, to Mrs. Ida L. Dargan (to be held as an escrow by Mr. Brunson for 30 days) in consideration of $7,400; and Mr. Dargan executed to Mrs. McSween his bond, conditioned for the payment within 30 days of $7,400, after first deducting from said sum ($7.400) "the full amount of every mortgage, debt, or judgment that is, or may be, a lien upon the aforesaid tract of land," &c. (The deed and bond should be printed in the report of the case.) At the expiration of the 30 days, the amount of the encumbrances was ascertained and deducted from the $7,400, and the amount left, $3,118.43, was paid to Mrs. McSween, and the deed previously executed by her to Mrs. Dargan, and left with Mr. Brunson, was delivered.

Afterwards, Mr. Dargan paid the encumbrances. He did not, however, have them marked "satisfied," as paid with the balance of the purchase money due by him to Mrs. McSween, but had them assigned to himself as purchased with his own money; and failing to induce Rose to surrender his lease, commenced this action to foreclose the assigned mortgages against Mrs. McSween,

his wife, Ida L. Dargan, and the lessee, H. S. Rose. No judgment for deficiency was asked against Mrs. McSween, but it was alleged that she had sold and conveyed to Mrs. Dargan only her equity of redemption in the premises, leaving the mortgages still open against the land, and that Rose was still in possession of the land under the lease to him by Mrs. McSween, which was junior to the mortgages, and prayed a sale of the land under the mortgages senior to the lease. Neither Mrs. McSween nor Mrs. Dargan answered, but Rose answering, denied that Mrs. McSween had conveyed to Mrs. Dargan only her equity of redemption ; alleged that the land had been sold for a price agreed upon ; that Mr. Dargan had retained of this sum an amount sufficient to pay off the encumbrances on the property, and had paid the balance to Mrs. McSween ; that he had paid up the encumbrances with the money of Mrs. McSween, and they were thereby "satisfied"; that he had brought this action solely to deprive him of his lease, which Mrs. McSween had promised to protect, and had protected, and asked for a dismissal of the complaint, &c.

The case was referred, to take the testimony, and Mr. G. W. Dargan testified, among other things, that on the day the papers were drawn, he explained that he was buying nothing but the equity of redemption ; that $7,400 was put in the deed as the consideration, because the amount to be paid to Mrs. McSween, viz., the difference between that amount and the encumbrances, could not be ascertained that day, he saying that it made no difference, as the true consideration could be proved by parol. He said, however, "I don't know that the words, equity of redemption, was used that day when discussing the consideration to be expressed in the deed. I am inclined to think it was not." Mr. W. F. Dargan concurred as to what was said that day. He said he drew the bond almost in the words of Mr. G. W. Dargan, and that it expressed the understanding between the parties. He said Mr. G. W. Dargan declared that he bought subject to the encumbrances, but not Rose's lease.

Mr. W. A. Brunson testified, among other things, "that he had considerable correspondence with Mr. Dargan as to the purchase of the land, and afterwards, upon meeting him at Florence, they agreed upon a price. * * * The difference between the amount

paid Mrs. McSween and the value of the place was left in Mr. Dargan's hands for the purpose of paying off all encumbrances, in order to get Mrs. McSween entirely out of the transaction. There was no actual money left, but he regarded it as money because it was part of the purchase price. There was no positive agreement on the part of Mr. Dargan to pay those encumbrances in express language. * * * There was no special mode of settling the encumbrances. Mrs. McSween was to receive the difference between the encumbrances and the value of the land, and Mr. Dargan was to settle the encumbrances when and how he pleased," &c.

Upon this testimony the Circuit Judge held that "there was no agreement that G. W. Dargan should pay Mrs. McSween the estimated value of the land, or reserve part of the contract price, with which to pay the outstanding mortgage: but that it was agreed that Dargan should pay Mrs. McSween a sum to be ascertained by deducting the amount of the encumbrances from the agreed value of the land;" that the encumbrances were not extinguished by the assignment to George W. Dargan; and he decreed that the mortgage be foreclosed, and the premises sold for payment of the mortgage debt, and that each party pay his own costs—incurred by his own proceedings.

From this decree the appeal comes to this court upon the following grounds, viz. :

"First. That his honor erred in holding as a conclusion of fact, 'That there was no agreement that G. W. Dargan should pay Mrs. McSween the estimated value of the land, or reserve part of a contract price with which to pay the outstanding mortgages, but that it was agreed that Dargan should pay Mrs. McSween a sum to be ascertained by deducting the amount of the encumbrances from the agreed value of the land.' His conclusion being expressly, in large part at least, founded upon incompetent parol evidence given to vary the terms of a written instrument, admitted by plaintiff to contain the agreement of himself with Mrs. McSween, and said conclusion being against the overbearing weight of the testimony.

"Second. That his honor erred in finding 'as a conclusion of law, that when Mrs. McSween received $3,118.43, she had re-

ceived all she had bargained for, and no money of hers was reserved.'

"Third. That his honor erred in holding that 'as the contract in the case under consideration was not an agreement to pay Mrs. McSween a particular sum, as purchase money for land encumbered by a mortgage, but rather an agreement to pay Mrs. McSween a sum to be ascertained by deducting the amount of the mortgage from the estimated value of the land, the sum so paid was a complete execution of the contract,' it being respectfully submitted that even if the contract had been as stated, after the payment of the money, Mrs. Dargan was still bound to indemnify Mrs. McSween and those holding under her from the mortgages, to the extent at least of the value of the land.

"Fourth. That his honor erred in holding that 'Mrs. Ida L. Dargan holds the fee conveyed to her by Mrs. McSween, and G. W. Dargan is in no sense the agent of his wife in the transaction—the assignment of the mortgage to him, therefore, could not possibly merge the lien of the mortgage in the title,' it having been admitted, and his honor having so found in the first part of his decree, that Mr. G. W. Dargan had transacted the whole affair as the agent of his wife, and otherwise as acting for himself in making a present to his wife, and that the true question at issue did not involve the doctrine of merger.

"Fifth. That his honor erred in regarding the legal question involved in the issue as the question of the merger of a mortgage, when purchased by the owner of the land; whereas the true question is, whether G. W. Dargan and his wife, purchasing in the manner they did, did not bind themselves to pay the encumbrances.

"Sixth. That his honor erred in holding that the encumbrances described are not extinguished by their assignment to G. W. Dargan, it being submitted that under the correct theory of the transaction it was the duty of Mr. Dargan to pay up the mortgages, and that therefore they became extinguished when purchased by him.

"Seventh. That his honor erred in adjudging that the mortgages should be foreclosed, and that each party pay the costs incurred by his own proceedings.

"Eighth. That it being admitted that the plaintiff regarded his wife as owing him nothing, and that she was not to be injured by the action, and that he had agreed to protect Mrs. McSween against the mortgages, his honor should have held that there was no ground for the action to foreclose, and should have dismissed the complaint; and it was error not to have so held and adjudged.

"Ninth. That it being admitted that the sole purpose of the action was to deprive the defendant Rose of the benefits of his lease, which could and should have been protected in the sale, the complaint should have been dismissed for want of equity ; and it was error not to have so adjudged.

"Tenth. That as it appears from the written testimony in the case that the parties, after long negotiation, had agreed upon $7,400, not as the estimated value of the land, but as its purchase price, and the amount remaining after deducting therefrom the amount of the encumbrances having been paid to Mrs. McSween, the law implied an agreement to apply the sum so reserved to the satisfaction of the encumbrances; and his honor erred in not so holding," &c.

The controlling question in the case is as to the contract between the parties—whether there was a contract, and if so, what was its scope and import—and that being a question of fact, we must, in an equity suit, consider the whole evidence. We have read it carefully, and, difficult as it may be to reconcile the different impressions of witnesses—all alike honest and truthful— we must give our interpretation of it taken as a whole. The principal finding of fact by the Circuit Judge naturally divides itself into two parts, and for the purpose of promoting clearness, we will so divide it.

First. The Circuit Judge found "that there was no agreement that G. W. Dargan should pay Mrs. McSween the estimated value of the land," &c.; that is to say, that he only agreed to purchase her equity of redemption, leaving the encumbrances open. We cannot concur in this finding. It appears that the principal object of Mrs. McSween, in offering her land for sale, was to sweep off the encumbrances. All the parties had notice of them, but it was well known that the land was worth more than enough to satisfy them, and therefore there was no neces-

sity, in the negotiations about the trade, to consider the encumbrances. If there is any one fact in the case clear beyond all doubt, it is that the whole negotiation was conducted with exclusive reference to the purchase price to be paid for the land—not the mere equity of redemption, but the land itself—no reference being made to any of the encumbrances, except that in the correspondence Mr. Dargan speaks once or twice of his inability to give more for the land, on account of the existence of the lease to Rose, which he spoke of as "a most serious complication." We think it plain from the evidence that Mr. Brunson, attorney of Mrs. McSween, and Mr. Dargan, upon meeting at Florence, "agreed upon a price for the land;" that Mr. Dargan agreed to purchase the land for $7,400 cash, which, as he said, was a large sum for him to borrow. From what appears, prior to December 27, 1887, there can be little doubt that if Mr. Dargan had been in condition to pay the purchase money, he would have paid the whole of it on that day to Mrs. McSween, who would have paid off the encumbrances and afterwards executed and delivered her absolute warranty deed to Mrs. Ida L. Dargan.

Second. The Circuit Judge further found "that there was no agreement that G. W. Dargan was to reserve part of a contract price with which to pay the outstanding mortgages, but that Dargan should pay Mrs. McSween a sum to be ascertained by deducting the amount of the encumbrances from the agreed value of the land," &c. We think the finding just made must also determine the question. There was some parol testimony as to conversation and discussion said to have taken place on the occasion (December 27, 1887) when the parties met to consummate the trade; but certain papers were then drawn and signed, and we think it safer to rely on those papers (deed of Mrs. McSween and bond of Mr. Dargan). These papers contain the formal written statement of the agreement, and, of course, must be considered as the best evidence of its terms. Mrs. McSween signed a deed, conveying the land in the usual form, with warranty of title, to Mrs. Ida L. Dargan, "in consideration of the sum of $7,400 to me in hand paid at and before the sealing of these presents" (which was to be kept as an escrow for 30 days). And Mr. Dargan executed to Mrs. McSween his bond, conditioned to

pay to her "the full and just sum of $7,400," mentioned in Mrs. McSween's deed, within 30 days "after first deducting therefrom the full amount of any mortgage, debt, or judgment that is or may be a lien upon the aforesaid tract of land, and upon the delivery of the aforesaid deed to Ida L. Dargan the above obligation to be void," &c.

The bond bound Mr. Dargan to pay so much of the purchase money to Mrs. McSween as was over after paying the encumbrances, but it was silent as to the payment of the encumbrances; did not in express terms declare that Mr. Dargan was to pay them; but we cannot doubt that such was the necessary result of the whole transaction. As it seems to us, this is the only interpretation consistent with all the facts of the case. If not, to whom did the remainder of the purchase money belong? to Mrs. McSween or Mr. Dargan? The land had been sold for $7,400 cash—after deducting the encumbrances the purchase money was paid to Mrs. McSween, and thereupon leaving the equivalent of the encumbrances in the hands of the purchaser, she delivered her warranty deed, previously signed, to Mrs. Dargan, who accepted the same. The deed was expressed to be in consideration of the whole purchase money, $7,400. We do not see how Mrs. McSween could admit in her deed that she had received the whole purchase money, except upon the assumption that the remainder of the purchase money had been paid in extinguishment of the encumbrances, or how the deed could be accepted by Mrs. Dargan except on the same assumption. These papers are, as we think, inconsistent with the view that Mrs. McSween conveyed only her equity of redemption—leaving open and unpaid the encumbrances, already, as she thought, provided for—open and unpaid, to be purchased possibly by a stranger and enforced against her donee and herself by foreclosure and resale of the premises at auction. Surely this could not have been the intention of Mrs. McSween or of her attorney.

Considering all the facts and circumstances of the case together, we cannot resist the conclusion that an obligation on the part of Mr. Dargan to apply the purchase money left in his hands in extinguishment of the encumbrances was necessarily involved, and that this was Mrs. McSween's understanding of the arrange-

22—33

ment. "When one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the encumbrance of the mortgage debt as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage of the land to secure it. The amount of an existing mortgage having been deducted from the purchase money of the encumbered property, the grantee in effect undertakes to pay the amount of the purchase money represented by the mortgage to the holder of it." Jones on Mortgages (late edition), sec. 736.

"An agreement that the amount of a mortgage upon the granted premises shall be paid as a part of the purchase money is, in effect, an assumption to pay the mortgage, and not merely a taking of the property subject to the mortgage. The mortgage in such a case is charged upon the purchase money and not upon the land merely. So much of the consideration as is required to pay the mortgage is taken from the consideration and appropriated by the parties to the payment of the mortgage, and equity raises upon the conscience of the purchaser an obligation to indemnify the mortgagor against the mortgage debt. * * * There is an implied promise on the part of the purchaser to pay the mortgage when it is due, or. if it be already due, to pay it forthwith, or within a reasonable time." See 1 Jones Mort., § 749; Pom. Eq. Jur., §§ 1203, 1208; Boone Mort., § 125; *Heid* v. *Vreeland,* 30 N. J. Eq., 591. In this last case cited it was said: "There can be no doubt at this day that where the purchaser of land encumbered by a mortgage agrees to pay a particular sum as purchase money, and on the execution of the contract of purchase the amount of the mortgage is deducted from the consideration, and the land conveyed subject to the mortgage, that the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not. This obligation results necessarily from the very nature of the transaction. Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it," &c.

Besides, Mr. Dargan was the agent of his wife in the purchase of this land. There was no evidence that the agency was at any

time withdrawn, and it seems to us that he continued to be her agent throughout the whole transaction, including not only the execution of the deed of conveyance directly to his wife, but also the assignment of the mortgage to himself, which, of course, was for her benefit. As was said in the case of *Lamar* v. *Wri ht,* 31 S. C., 76, "we think we are bound to consider that he (the husband) was still acting for his wife. * * * It is not uncommon for the husband (accustomed to outdoor business) to act in such matters as the agent of his wife. But we cannot doubt that such agency, being once established, it should, as in ordinary cases of agency, continue until the particular business is ended, or the agency revoked," &c.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the complaint dismissed.