ALLGOOD *ET AL.* v. SPEARMAN *ET AL.*

(118 S. E. 189)

MORTGAGES—PURCHASER PAYING MORTGAGOR DIFFERENCE BETWEEN PURCHASE PRICE AND MORTGAGE ASSUMES MORTGAGE.—Where purchaser pays mortgagor the difference between the agreed purchase price and the mortgage, purchaser assumes the mortgage and is liable to mortgagee for a deficiency.

Before CHARLES CARROLL SIMMS, Special Judge, Anderson, October, 1922.   Affirmed.

Action to foreclose a mortgage by James E. Allgood and others, executors, against W. D. Spearman, R. G. Sheck, and others.   From a judgment imposing liability on defendant R. G. Sheck for a deficiency, he appeals.

*Mr. W. G. Sirrene,* for R. G. Sheck, appellant cites: *Purchaser who buys subject to mortgages is not personally liable for debt:* 108 S. C., 475; 19 R. C. L., 380; Secs. 150, 151; 104 Ill. App., 238; 67 Mo. App., 90; 72 S. W., 1085; 51 Pac., 1047; 92 Atl., 887; 175 Ill. App., 525; 156 N. W., 298; 161 N. W., 309; L. R. A., 1917-C 590; 119 S. W., 822; 95 Pac., 314; 90 Atl., 369; 158 Ill. App., 653; 143 N. W., 869; 128 S. W., 1011; 134 S. W., 10; 140 Pac., 265; 190 Ill. App., 607; 19 R. C. L., 373, 372, 380, 381; 78 Am. Dec., 83; 85 Am. Dec., 732; 27 Cyc., 1343, 1345.

*Messrs. Carey & Carey* and *Watkins & Prince,* for respondent, W. D. Spearman, cite: *Burden on appellant to show error:* 101 S. C., 362.   *Amendment discretionary:* 18 S. C., 305; 85 S. C., 94.   *Judgment against Sheck proper under pleadings:* 27 Cyc., 1643, 1749; 33 S. C., 202; 57

S. C., 534. *Agreement to assume mortgage can be proven by parol:* 79 S. C., 134. *Where part of consideration:* 72 S. C., 410; 28 S. C., 172; 18 L. R. A. (N. S.), 907; 18 L. R. A. (N. S.), 225; 23 N. J. Eq., 150; 44 Iowa 325; 27 Wis., 187; 90 Pa., 78; L. R. A. (N. S.), 1917-C 594. *Personal liability for mortgage debt:* 121 Ill., 130; 27 L. R. A., 449; 8 Biss., 211; 18 L. R. A. (N. S.), 907; 18 L. R. A. (N. S.), 225; 23 N. J. Eq., 150; 44 Iowa 325; 27 Wis., 187; 90 Pa., 78; 33 S. C., 324; 1 Jones Morts. Sec., 736; 87 S. E., 588; 57 S. C., 534; 70 N. E., 901.

*Messrs. Martin & Blythe,* for J. E. Allgood *et al.,* respondents.

June 26, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The statement of facts contained in this case reads:

"This is an action for the foreclosure of a mortgage given to the plaintiff's testate by W. D. Spearman to secure five promissory notes, each for $5,203.87, dated January 1, 1920, for part of the purchase money for four tracts of land in Anderson County, South Carolina, with interest at 7 per cent. from date. R. G. Sheck purchased the land from W. D. Spearman after the mortgage, and the defendant, L. W. Campbell, claimed under a lease in the year 1922. The prayer of the complaint was for judgment against the defendant W. D. Spearman for a receiver for the rents and profits, for the foreclosure of the mortgage, and for 'such other and further relief as the Court may deem just and proper.'

"The defendant, W. D. Spearman, in the fourth paragraph of his answer alleges that on July 30, 1920, he conveyed to R. G. Sheck the lands described in the complaint, and that the consideration 'was the sum of $50,000, the said defendant R. G. Sheck assuming the indebtedness of the defendant, W. D. Spearman, under his notes and

mortgage to E. F. Allgood,' the balance of the considera-
tion being paid in other property and notes. The defend-
ant, Sheck, admitted that he purchased the lands, but denied
that he assumed the payment of any notes, and that there
was any obligation upon him to pay to the plaintiffs any-
thing further than they might receive by foreclosure of
the premises. This defendant also set up other defenses,
but it is not necessary to consider the same, as the purpose
of this appeal is to raise the single question, namely, that
under the law and the testimony in this case there is no ob-
ligation resting upon Sheck to pay any deficiency judgment
which may be obtained against his codefendant, Spear-
man.

"The case was referred to W. P. Nicholson as special
master, who took testimony and found that Sheck was liable
for any deficiency which might arise from the sale of the
mortgaged premises. On exceptions taken the master's
report was sustained by Hon. Charles Carroll Simms sitting
as special Judge. Notice of appeal to this Court was given
in due time. Judgment was entered up and the property
sold on sales day in December, 1922, for $10,000. After
applying the proceeds of sale to the mortgage debt there
remained a deficit of $——— which was entered up against
the defendants, W. D. Spearman and R. G. Sheck."

The question is: What did Sheck buy? He claims to
have bought only Spearman's equity of redemption. The
Master and trial Judge concur in finding that he bought
the land and assumed the debt. They do not give their
reasons for so holding, but the reason is manifest. Sheck
freely admits that the consideration was $50,000 and that
he paid the difference between the $50,000 and the mortgage
debt. If the consideration was, as he admits, $50,000,
then he did not buy simply Spearman's interest, but the
land itself, and reserved from the consideration the amount
of the incumbrance.

In *Dargan v. McSween,* 33 S. C., 338; 11 S. E., 1081, we read:

"There can be no doubt at this day that where the purchaser of land incumbered by a mortgage agrees to pay a particular sum as purchase money, and on the execution of the contract of purchase the amount of the mortgage is deducted from the consideration, and the land conveyed subject to the mortgage, that the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not. This obligation results necessarily from the very nature of the transaction. Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it."

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE COTHRAN (dissenting): Action for foreclosure of a mortgage. The contest is between the mortgagor, W. D. Spearman, and the purchaser of the land from him, R. G. Sheck, and involves the liability of the purchaser for the deficiency judgment entered up after sale. The undisputed facts are these:

On January 1, 1920, one E. F. Allgood sold and conveyed to the defendant, W. D. Spearman, certain land in Anderson County, four tracts consisting of 282 acres; Spearman paid a part of the purchase money and gave Allgood 5 notes, $5,203.87 each, payable respectively January 1, 1921, 1922, 1923, 1924 and 1925, with interest from date at 7 per cent. payable annually, compounded, with 10 per cent. attorney's fees; there was a provision maturing the entire debt upon default of any note or the interest. E. F. Allgood died January 13, 1920, and the plaintiffs qualified as his executors.

On July 30, 1920, Spearman sold and conveyed the land to Sheck at $50,000; the amount due upon the Allgood notes and mortgage at that time was $27,076.60; Sheck paid to Spearman in other property and notes $22,923.40, and took a deed for the land which contained this clause:

"It is mutually understood that the estate of the late E. F. Allgood holds five (5) notes of $5,203.87 each, secured by mortgage, on the above tract of land, said notes dated January 1, 1920, and due in one, two, three, four and five years respectively, bearing interest from date at 7 per cent. per annum, interest payable annually."

The deed contained no other reference to the Allgood notes and mortgage, and contained a general warranty. The defendant Sheck went into possession of the land, and on January 3, 1921, paid to the executors $1,821.35, presumably the interest on all five notes from July 30, 1920, to January 3, 1921. On account of default in the payment of the note due January 1, 1921, the executors instituted suit for foreclosure, making Sheck also a party. (The date of the commencement of this action does not appear in the record.)

Spearman answered admitting the execution of the notes and mortgages, not resisting the foreclosure, but contended that in the trade between him and Sheck, as a part of the consideration Sheck had assumed the payment of the Allgood notes and mortgage, and that any judgment for deficiency should be entered against Sheck. Sheck answered, setting up certain defenses which appear to have been abandoned, and claiming that he had bought the land subject to the Allgood mortgage, and had not personally assumed the payment of the notes.

The issues were referred to W. P. Nicholson, Probate Judge, as special referee. He filed a report dated September 26, 1922, in which he recommended foreclosure of the mortgage. Without discussing the evidence, he found as

follows, in reference to the contest between Spearman and Sheck:

"I find from the testimony that W. D. Spearman, on or about July 30, 1920, conveyed the premises bought by him from E. F. Allgood, to the defendant R. G. Sheck, who assumed the indebtedness due to E. F. Allgood as part of the consideration paid by him for the said premises."

The defendant Sheck filed exceptions to this report, and the matter was heard by Hon. Charles Carroll Simms, special Judge, at Anderson. He filed a decree dated October 3, 1922, and also, without discussion of the evidence, confirmed the special referee's conclusions of law and fact and ordered foreclosure and sale. The decree provided that judgment for the deficiency should be entered against both defendants, but that Spearman should be subrogated to the rights of the plaintiff, as against Sheck, for any part thereof paid by him.

On sales day in December, 1922, the property was sold under the decree for $10,000. After applying the proceeds of sale to the costs, expenses, and to the mortgage debt, there remained a deficiency in an amount not stated in the record, but which must have exceeded $20,000, upon which judgment was duly entered against both Spearman and Sheck.

The defendant Sheck has appealed from the decree, as the counsel for the appellant states, upon "the one point raised by this appeal, namely, that Sheck cannot be held liable for any deficiency judgment."

The defendant, Spearman, relies upon an express undertaking on the part of Sheck that he would and did assume the payment of the Allgood notes and mortgage. He claims in his answer and in his testimony that this was part and parcel of the land trade. He appears to recognize, and to attempt to comply with, the well-established rule that under ordinary circumstances such an agreement is

essential to fix personal liability upon the purchaser of encumbered real estate.

"The grantee of mortgaged lands does not incur a personal liability for the payment of the mortgage debt, enforceable by the mortgagee, merely because the deed recites that it is made subject to the mortgage; such personal liability is created only by a distinct assumption of the debt or contractual obligation to pay it." 27 Cyc., 1343.

In 3 Pom. Eq. Jur. p. 189, § 1205, it is said:

"Where a mortgagor conveys by a deed which states simply that the conveyance is 'subject to' a certain specified mortgage, or words to that effect, the grantee takes the land burdened with the lien. As between himself and the grantor-mortgagor, the land is the primary fund out of which the mortgage debt should be paid; he cannot claim that the mortgagor should pay off the mortgage and thus exonerate the land. He does not, however, become personally liable for the mortgage debt, but the mortgagor remains personally liable for any deficiency arising upon a foreclosure sale of the land. A grantee who thus takes a conveyance subject to a mortgage is presumed to have included the mortgage debt in the purchase price, and is not, therefore, permitted to dispute the validity of the mortgage; in this respect he is in the same position as one who expressly assumes the mortgage."

"While no particular form of words is necessary to constitute a contract of assumption, a statement in a deed that it is made subject to a specified mortgage does not alone make the grantee personally liable for the payment of the mortgage debt. Such a stipulation does not with sufficient clearness import an intention by the grantor to create and by the grantee to assume a personal obligation to pay the mortgage debt." 19 R. C. L., 380.

"If the purchaser buys a mere equity of redemption, he is not personally liable for the mortgage debt; or liable either

legally or equitably to indemnify his grantor against the mortgage. He may give up the property at any time in satisfaction of the lien. The mortgage debt remains an incumbrance upon the estate, and a debt of the mortgagor, but not a debt of the person buying. In the absence of a special agreement to assume the mortgage or words in the grant importing in some form that he assumes the payment of it, the purchaser is not personally liable for it." 1 Jones, Mtg. (6th Ed.), 750.

"A deed which is merely made subject to a mortgage specified does not alone render the grantee personally liable for the mortgage debt; to create such liability there must be language which clearly imports that the grantee assumes the obligation of paying the debt." 1 Jones, Mtg. (6th Ed.), 770.

"A purchaser of land accepting a deed expressly conveying it subject to a mortgage, and excepting it from the covenants, is not himself personally liable to pay it, unless he covenants to do so. The land in such case is primarily liable as between the vendor and purchaser; and the vendor is liable for any deficiency after a foreclosure sale fairly made." 1 Jones, Mtg. (6th Ed.), p. 771.

In *Belmont v. Coman,* 22 N. Y., 438; 78 Am. Dec., 213, the recital was "subject [to a mortgage described] which * * * has been estimated as part of the consideration money for this conveyance and has been deducted therefrom." The Court says:

"The cases all agree that the purchaser of a mere equity of redemption, without any words in the grant importing that he assumes the payment of the mortgage, does not bind himself personally to pay the debt. * * * If the language had stopped with declaring the subjection of the land to the lien of the mortgages, it would have been the ordinary case of the purchase of a mere equity of redemption. According to all the cases, the land would have been

the primary fund for the payment of the mortgages, yet
without any other liablity on the part of the grantee. But
the other words, it seems to me, impart nothing additional
or different. On the contrary, they appear to be used for
greater caution."

In *Drury v. Tremont,* 13 Allen (Mass.), 168, the pur-
chaser took the land subject to a mortgage. The deed did not
state that he assumed the debt, nor did it have any provision
to that effect. The Court held that the mere acceptance of
the deed did not make him personally liable to pay the debt
or discharge the incumbrance; that, in the absence of other
evidence, he merely purchased the equity of redemption.

In *Hubbard v. Ensign,* 46 Conn., 576, the Court said.
in effect, that the language of the deed was at best doubtful
and ambiguous, and was susceptible of a meaning other than
that the grantee assumed a personal obligation to pay the
mortgages; that the language was chosen by the grantor,
and it was within his power to express an obligation of the
grantee in plain and intelligible language if any such obliga-
tion had been agreed upon.

"Where land is conveyed [in terms] subject to a mort-
gage, the grantee does not undertake, or become bound by
the mere acceptance of the deed, to pay the mortgage debt.
In the absence of other evidence, the deed shows that he
merely purchased the equity of redemption." *Strong v.
Converse,* 8 Allen (Mass.), 557; 85 Am. Dec., 732; *Fiske v.
Tolman,* 124 Mass., 254; 26 Am. Rep., 659.

"A deed which is merely made subject to a mortgage
specified does not render the grantee  *  *  *  liable for
the mortgage debt." *Crawford v. Nimmons,* 180 Ill., 143;
54 N. E., 209.

The defendant Spearman having planted himself upon
the theory of an express undertaking by Sheck must stand
or fall by it. The burden is upon him to establish it by the
preponderance of the evidence. In my opinion he has

failed in this undertaking, and that the findings of the referee, confirmed by the Circuit Judge, should be reversed.

Spearman, in his testimony, states that:

"Mr. Sheck was to assume the mortgage due to E. F. Allgood and interest due to the date of the deed, which amounted in round figures to $27,000.   *   *   *   The debt to Allgood was part of the consideration for the land. I parted with the possession of the land on the assumption of the Allgood mortgage by Mr. Sheck.   *   *   *   I have no writing other than the deed that Sheck assumed the mortgage.   *   *   *   Mr. Sheck recognized the obligation to the Allgood estate in all the conversations he had with me. *   *   *   We told Mr. Smith that the indebtedness to Allgood was a part of the consideration, and it was figured in the consideration at the time the deed was drawn."

The absence of all circumstantiality in the testimony of Spearman, as to the time and place and words of Sheck, is significant, and leads to the belief that he was simply stating his own conclusions about the matter. He had his friend W. C. Smith to draw the deed from himself to Sheck, and, while the draftsman was careful to make reference to the outstanding mortgage, there is no suggestion in the deed of any assumption by Sheck of the mortgage referred to. His unsatisfying statements constitute the entire evidence to sustain his contention.

His friend, W. C. Smith, put up as his witness, in the face of Spearman's statement that "we told Mr. Smith that the indebtedness to Allgood was a part of the consideration, and it was figured in the consideration at the time the deed was drawn," testified:

"Sheck took the deed subject to the outstanding notes and mortgage securing them, was my understanding. There was nothing said, nor was there any writing that Mr. Sheck assumed the mortgage indebtedness, except as it was secured by the mortgage on the land."

The appellant Sheck testified:

"I had notice of the outstanding Allgood debt, and I took the land subject to that mortgage. I did not orally or in writing assume the debt other than as a lien on the land. * * * At no time since I bought the land have I orally or by any writing assumed the payment of the Allgood debt, other than as it constituted a lien upon the land. * * * There was nothing said at this conference about my assuming the Allgood debt, and releasing Spearman. * * * The Allgood mortgage was on the place, and I traded for it subject to the mortgage. * * * I knew there was a mortgage on the place and that I bought the place subject to the mortgage."

The witness A. F. Day, called by the defendant Sheck, apparently a disinterested witness, testified that he was present and heard the trade between Spearman and Sheck in the Miller's Cafe, and "there was nothing said at the time about Sheck assuming the Allgood debt."

I fully appreciate the rule laid down in *McLure v. Goodwin,* 101 S. C., 362; 85 S. E., 900:

"This Court has often held that in reviewing questions of fact found by the Master, and concurred in by the trial Judge, it is incumbent upon the appellant to satisfy this Court by the preponderance of the evidence that the finding of the Circuit Judge was erroneous,"

—but feel convinced that the absence of circumstantiality in Spearman's testimony, the utter lack of confirmation of it, the absence of a written statement which would so readily have been suggested when incorporating a reference to the notes in the deed, the absence of a single declaration by Sheck, the testimony of W. C. Smith and A. F. Day, not to speak of the testimony of Sheck, annihilate the respondent's claim to a preponderance of the evidence, and that it is the other way. It is much more probable, in my estimation, that in the glow of inflated prices the matter was

not considered as precautionary measure, and that it is an afterthought inspired by the cruel results of deflation.

While the results to Sheck of the ruling below are not to be considered if such an agreement was made, I do not propose to visit him with them upon the unsatisfactory showing made by the respondent.

He has paid Spearman in property and cash $22,923.40, all of which is gone. To saddle him now with a loss of probably that much more spells ruin to him, and should not be tolerated except upon the clearest, most satisfactory evidence that he assumed the undertaking in question.

It has been suggested that Sheck acknowledged his assumption of the mortgage by the payment of interest on the notes up to January 1, 1921. This suggestion is foreclosed by the case of *Elliott v. Sackett,* 108 U. S., 132; 2 Sup. Ct., 375; 27 L. Ed. 678. See, also, *Shephard v. May,* 115 U. S., 505; 6 Sup. Ct., 119; 29 L. Ed., 456; *Orr v. Dayton Co.,* 178 Ind., 40; 96 N. E., 462; 48 L. R. A. (N. S.), 474; Ann. Cas., 1915B, 1277.

It is insisted, however, on the part of Spearman that, if there was not an express assumption of the debt by Sheck, the Court will imply such an undertaking or obligation on his part from the circumstances of the case. Having alleged an express assumption, I do not think he is entitled to rely upon an implied one.

The case of *Dargan v. McSween,* 33 S. C., 324; 11 S. E., 1077, upon which the leading opinion relies, presents a very different situation from that in the case at bar. There the purchaser agreed to give $7,400 cash for the property, and the object on the part of the seller in making the trade was to get clear of debt, represented by outstanding mortgages; the purchaser gave the seller a bond conditioned to pay her $7,400 after deducting the amount of the incumbrances; in other words, he held back the difference for the purpose of paying off the mortgages, as was held by the Court;

the necessary interpretation of which was that he was obligated to pay them. That is the effect of the New Jersey case cited in the leading opinion. Both the Dargan case and the New Jersey case present instances of implied assumption.

But conceding that Spearman is entitled to rely upon an implied assumption, the facts do not sustain that contention. There are, as I understand, two ways by which a purchaser may impose upon himself the personal obligation to pay off outstanding incumbrances: (1) By an express, explicit, assumption of the incumbrances; (2) by a contract to pay a definite sum as purchase money, but in settling he deducts from the purchase price the amount of the incumbrances to be paid by him upon the incumbrances. The former is express, the latter implied from the nature of the transaction.

As is said in the New Jersey case, *Heird v. Vreeland,* 30 N. J. Eq., 591:

"Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it. * * * But where the purchase money agreed upon represents the whole value of the premises free from the mortgage, and one of the mortgagor's objects in selling is to relieve himself from the mortgage debt, the vendor would seem, according to the plain meaning of the arrangement, to have a clear right to the whole sum agreed to be paid, or, if part is kept back to pay the mortgage, that the purchaser shall be required either so to apply it, or to indemnify the mortgagor against the mortgage debt."

Unless the implication of assumption be limited to the circumstances thus stated, there is no difference between the purchase of incumbered property simply subject to the incumbrances, involving no personal liability, and the assumption of the incumbrance.

If, as I have endeavored to show, Spearman has failed in his effort to establish an express assumption, there is nothing left to the case except the written evidence, and all that that shows is a purchase of incumbered property, not even. a purchase subject to the mortgage. There is no evidence that Sheck agreed to give a certain price for the land; there is no evidence that Spearman sought relief from the debt; there is no evidence that Sheck held back a part of the purchase price to be paid by him on the mortgage.

The fact that the land was valued at a certain figure and the mortgages deducted therefrom is of no significance, for, if the trade by its terms was that Sheck should simply buy the land subject to the mortgage without any personal liability, the agreed value of the land would have to be ascertained as the basis of their settlement.

I think to hold otherwise is to present in every case an assumption of the incumbrance and require the buyer in order to relieve himself from personal liability to have it so specified in the contract; whereas the presumption is the other way.

"But a promise on the part of the grantee to pay a mortgage upon the property cannot be implied from a statement in the deed 'subject however to a mortgage  *  *  *  of $7,000.00, which is part of the above-named consideration.' These words do not necessarily imply any obligation to pay the mortgage debt. They are to be considered as additional words of recital or description." 1 Jones, Mtg. (6th Ed.), p. 774.

"Whenever the mortgage debt forms a part of the consideration of the purchase, although the purchaser has not entered into any covenant or agreement to pay it, he is bound to the extent of the property to indemnify the grantor. The law implies a promise to that effect from the nature of the transaction; but the purchaser is under no personal liability to any one for such mortgage debt. This is the

law in England, where a contract to indemnify in favor of the grantor is implied. But the purchaser in such case does not assume any liability beyond the value of the land conveyed to him. If the mortgage debt be afterward paid by the mortgagor, equity will compel the purchaser by way of subrogation to refund the money so paid, or to give up the property. He may discharge his obligation to indemnify the mortgagor by releasing the lands to him. The obligation to indemnify the mortgagor in such case differs from that imposed upon the purchaser by an agreement to assume the mortgage debt, in that such agreement makes him personally liable to the mortgagor to indemnify him, whether the mortgaged property be sufficient in value for that purpose or not. He incurs a personal liability. As between him and his grantor he becomes a principal debtor, and the vendor a surety." 1 Jones, Mtg. (6th Ed.), p. 777.

A conveyance subject to mortgage is substantially a conveyance of so much of the property only as is not required for payment of the mortgage debt. *McNaughton v. Burke,* 63 Neb., 704; 89 N. W., 274.

"It is admitted that there was no express or direct promise on the part of the defendant to pay the mortgage debt, and it cannot be held that the mere purchase of premises subject to a mortgage renders the purchaser personally liable to the mortgagee, as having assumed to pay it, or that the mere payment of interest in itself imposes that liability." *Metropolitan Bank v. Dispatch Co.,* 149 U. S., 436; 13 Sup. Ct., 944; 37 L. Ed., 799.

Other cases involving the principles discussed in varying phases may be found as follows:

N. E. Reporter: 9, 464; 13, 547; 3, 296; 14, 285; 33, 260; 46, 1105, 50, 198; 54, 209; 55, 458; 58, 1028; 60, 863; 124, 360.

Am. Rep.: 7, 44; 26, 659; 32, 469; 41, 199; 47, 467.

So. Rep.: 78, 887.

N. W. Rep.: 1, 1049; 4, 161; 5, 753; 24, 815; 17, 167; 44, 888; 43, 119; 50, 581; 51, 1040; 53, 265; 62, 970; 63, 119; 64, 211; 66, 91; 70, 440; 70, 1069; 77, 615; 78, 861; 79, 707; 82, 701; 85, 753; 87, 720; 89, 274; 176, 393.

Pac. Rep.: 30, 43; 32, 1091; 35, 275; 38, 816; 36, 980; 27, 389; 39, 741; 48, 654; 48, 865; 160, 679; 165, 609; 170, 1129; 174, 22; 174, 753; 179, 615.

S. W. Rep.: 42, 571; 198, 447.

Am. Dec.: 85, 732; 78, 213.

Atl. Rep.: 20, 127; 36, 634; 38, 763.

S. E. Rep.: 101, 65.

Fed. Rep.: 33, 706; 240, 292.

L. R. A. (N. S.): 16, 470; 48, 474; 1917C, 590.

L. R. A.: 27, 449.

Am. St. Rep.: 39, 363.

MR. JUSTICE WATTS concurs.