## SILVER CREEK NAVIGATION AND IMPROVEMENT COMPANY *v.* MARY E. MANGUM.

1. OBSTRUCTION OF STREAM. *Destroying ford and flooding land. Measure of damages. Case in judgment.*

    A navigation company, authorized by the legislature so to do, dammed up a shallow stream so as to make it navigable. The stream became wider so as to overflow the land of M., who lived on its western bank; it also became so deep that M. could no longer ford it and thus reach the public road by which she was accustomed to get to and from the county site and market town. M. brought an action against the company for damages. *Held,* that M. is not entitled to any punitive damages, and her right to actual damages must in any view be limited to compensation for the overflowing of her land and the cost of providing convenient means of crossing the creek; but this court, for the present, refrains from deciding whether the plaintiff has any right of recovery because of the deepening of the creek and consequent destruction of the ford, such deepening having been done by authority of the legislature.

2. SAME. *Action for damages. Evidence.*

    In such case it is error for the court to admit evidence to show that the defendant company refused to take freight for the plaintiff, or discriminated against her in handling her freight on the boats run by it on the deepened stream.

3. SAME. *Cost of inconvenience. Evidence.*

    But in such case evidence to show the cost of constructing a bridge or flatboat to enable plaintiff to cross the stream as enlarged is admissible to show the damage sustained by plaintiff.

Appeal from the Circuit Court of Yazoo County.

Hon. T. J. Wharton, Judge.

In 1884 the legislature granted to the " Silver Creek Navigation and Improvement Company " a charter by which the company was authorized to dam up a certain creek, known as Silver Creek, at its mouth, and thus convert it into a stream navigable for small craft. The company was fully authorized to widen, deepen, cut, or dig out the stream, remove obstructions on the banks, etc. Accordingly, the stream was dammed up.

Mrs. Mary E. Mangum is the owner of a plantation on the west bank of this stream. The public road which leads to the market town and county site, Yazoo City, is on the east bank and follows the stream down to its mouth. Before the dam was built by the company the stream was fordable except on rare occasions, and it was by crossing the stream that Mrs. Mangum had an outlet from her plantation to market, etc. The stream, after the dam was built at its mouth, widened considerably so as to cover a part of the plantation of Mrs. Mangum, which she used as a pasture, it being covered with Bermuda grass. The stream also became so deepened that it was impossible to ford it, and Mrs. Mangum was put to much inconvenience in reaching the public road. After some time the navigation company erected a temporary bridge across for foot passengers, about seven feet wide, but not sufficient for a carriage way.

In 1886 Mrs. Mangum brought this action against the Silver Creek Navigation and Improvement Company to recover damages for a willful obstruction of her way of ingress and egress to and from her plantation, the damage to her property from the inconvenience arising therefrom, and for the damage done by the overflowing of the waters on her land.

On the trial the plaintiff offered evidence tending to show that the captain of one of the boats of defendant navigating this stream had refused to take cotton for shipment for Mrs. Mangum, and after going further down on the same trip had taken cotton for some one else, and that when he carried cotton for her husband he charged him fifty cents per bale, and only charged others twenty-

five cents per bale. The defendant objected, the objection was overruled, and the evidence was admitted.

The defendant, on cross-examination of a witness for the plaintiff, asked him what it would cost to build a flatboat or a bridge for crossing the stream. The plaintiff objected to the question, and the objection was sustained by the court.

The court below refused certain instructions asked by the defendant, the substance of which is stated in the opinion of this court.

The jury found for the plaintiff, and assessed her damages at one thousand seven hundred and fifty-six dollars. From the judgment on such verdict the defendant appealed.

*D. R. Barnett* and *J. C. Prewett*, for the appellant.

1. There is nothing in the declaration in regard to the failure to carry cotton for Mangum, nor is there any reference in the declaration to the defendant company making discrimination as to charges for carrying cotton. If either of these matters had been embraced in the declaration they would have been improper, as making a misjoinder of causes, and not having been embraced in the declaration they cannot be used to aggravate plaintiff's damages. All these occurrences, according to the witnesses who detailed them, were long subsequent to the building of the dam and the flooding of Mrs. Mangum's land.

2. In an action for a nuisance, and that was manifestly the *theory* of the court below, though the theory was violated in practice, the general rule is that the plaintiff's measure of damages is the loss actually sustained. *Thayer* v. *Brooke,* 17 Ohio 489; *Luther* v. *Winnisimmet,* 9 Cush. 171. Suits for damages should not be matters of speculation, but reasonable claims for indemnification. One who, therefore, in the exercise of what he believes to be his rights, commits a nuisance against the property of another, is bound only for the actual damages sustained, including the trouble and expense of establishing the right to have the nuisance abated. *Kay* v. *N. O. Canal Co.,* 7 La. An. 259; *McNight* v. *Ratcliff,* 44 Pa. St. 156; *Shaw* v. *Cummiskey,* 7 Pick. 76.

Ordinarily, as respects injuries to real estate, the rule of dam-

ages is generally stated to be the difference between the value of plaintiff's premises before the injury and the value after the injury. *But this rule has no application to such nuisances as may be removed directly after the verdict, or for the continuance of which a 'second or third action may be maintained, or which may be abated by the order of the court.* In such cases a proper criterion by which to estimate the damages is the loss in the actual value of the property sustained by the *continuance* of the nuisance. *Pinney* v. *Berry,* 61 Miss. 359 ; *Park* v. *R. R. Co.,* 43 Iowa 636 ; *Chipman* v. *Palmer,* 9 Hand, N. Y. 517.

On this general subject see *Town of Troy* v. *Cheshire R. R. Co.,* 23 N. H. 83 ; *Plumer* v. *Harper,* 3 Ib. ; Anonymous, 4 Dall. (U. S.) 147 ; 17 Ohio 489 ; 3 Denio 283.

The nuisance, if any, in this case, was not in its nature permanent, as it could be abated at any time. Cut the dam at the mouth of the creek, where it empties into the Sunflower, and the land of the plaintiff would instantly be itself again. The water in Silver Creek would not rise to an inconvenient or annoying height more than three or four months in the year on an average, and the plaintiffs could manage in the future, as they did in the past, when they had to use a boat to cross and were compelled to swim their mules.

And, by the way, this annual flood in the creek, notwithstanding its certain recurrence and the depth of the water, does not seem to have had any effect in depreciating plaintiff's property. It was only when the water was kept up all the time that the injury became insupportable.

3. Defendant was a chartered company to perform a great public work. See their charter, Acts '84, p. 846, and the evidence here shows they were performing the duties imposed by their charter. A work erected by the legislature cannot be adjudged a nuisance if executed in an authorized manner in an authorized place. 24 N. J. Eq. 49 ; 28 Ib. 187, 446 ; *Rex* v. *Pease,* 4 Barn. & Ad. 30 (24 Eng. Com. Law).

4. The instruction of defendant, No. 10, should certainly have been granted. It simply announces the familiar principle fully

recognized by the court in several instances in this case—that there could be no exemplary damages unless the conduct of the defendant was actuated by fraud, willful injustice, or oppression.

*Hudson, Hudson & Holt,* for the appellee.

The court, by reference to the charter of appellant, will observe that it is similar to all railroad charters in this: It requires, as a preliminary step to the exercise of the rights and privileges conferred by the charter, that the right of way, material, etc., should be settled for—in short, that the owner thereof and the company should have an agreement and settlement on this subject first. In case of a failure to agree, etc., then a condemnation might and should be had, etc. Now, from the testimony in this case, it conclusively appears that nothing of this kind was done, and the only attempt made to obtain this of appellee was unsuccessful. Still, Parisot, representing the company, went ahead regardless of appellee's rights, and, in fact, took charge of and converted her property to the use of his company, interfered with and trampled upon her rights, privileges, etc., with an utter and reckless disregard such as stamps him a willful trespasser and entitles her to punitive damages.

This suit is founded on a tort and not on the idea of a nuisance. It is similar to a case of a railroad company building its track across a man's lands without first settling for the right of way. We submit that we could not abate the railroad as a nuisance, we could enjoin it before it erected its track, etc., but after it has done so we can and should treat it as a willful trespasser, just as we do appellant.

CAMPBELL, J., delivered the opinion of the court.

The circuit court should have sustained the objection of the defendant to testimony as to the failure or refusal of Parisot to take cotton for the plaintiff, and as to his discrimination against Mangum in the price of carrying cotton, and should have admitted evidence of the cost at which the convenience of crossing the creek might be secured to the plaintiff, and of everything which would have aided the jury in reaching a conclusion as to the damage actually

sustained by the plaintiff from the obstruction of the flow of water from the creek. We will not lay down the rule as to the measure of plaintiff's right to recover, and leave that for future determination, but are confident that the utmost extent of her right is to be compensated for the damages sustained by the overflowing of her land and the cost of providing convenient means of crossing the creek. We do not decide that she is entitled to recover because the fordability of the creek at certain seasons of the year has been destroyed by authority of the legislature, but if this is ground for recovery its measure must be the cost of providing a crossing. It may be that the legislature has authority to provide for changing a shallow stream into a deep one, and that they who are inconvenienced by it have no right to recover anything for it. *Commissioners, etc.,* v. *Withers,* 29 Miss. 21.

We think it clear that all idea of punitive damages should have been repudiated, and that the jury should have been instructed, as asked by the defendant, that in no view could the plaintiff recover more than would provide her with as good access to the public road on the east side of the creek as existed before it was deepened, and damages for the submerging her land. As said above, we do not decide that she has a right to recover because the water was increased so that she could not cross as before, but certainly should not have been allowed to recover beyond that.

*Reversed and remanded for a new trial.*