No. 13,586.

## RENIHAN ET AL. *v.* WRIGHT ET AL.

CORPSE.—*Custody and Burial of.*—*Surviving Relatives Entitled to.*—*Action by Husband and Wife.*—*Bailment.*—*Complaint.*—*Sufficiency of.*—*Demurrer.*—*Parties.*—In an action instituted by husband and wife against the defendants, undertakers and funeral directors, it was alleged in the complaint that the plaintiffs employed the defendants to take charge of and safely keep, in a secure vault, the body of their deceased daughter until such time as they might be prepared and ready to inter the same; that in pursuance of such employment the defendants took charge of said remains and placed the same in a vault; that plaintiffs compensated them for the services they agreed to render; that the defendants did not safely and securely keep said remains, but carelessly and negligently took or allowed the same to be taken and buried or otherwise disposed of, and wrongfully refused to inform the plaintiffs where said remains had been removed to, further than to say: "Your child is in Ohio;" that by reason thereof the plaintiffs had suffered great distress of mind. Prayer for damages.

*Held,* that the bodies of the dead belong to the surviving relatives, in the order of inheritance, as other property, and that they, and not the executor or administrator, have the right to the custody and burial of the same.

*Held,* also, that the complaint was not subject to demurrer on the ground that it did not state a cause of action in favor of both the plaintiffs; that it disclosed a joint cause of action in the plaintiffs, it being alleged that both the plaintiffs entered into the contract of bailment therein set out, and that they jointly compensated the defendants for such bailment.

SAME.—*Answer.*—*Plea of Satisfaction.*—*Insufficiency of.*—An answer to the foregoing complaint alleged, in substance, that the plaintiffs had failed to pay the agreed compensation; that the defendants by mistake had

Renihan *et al. v.* Wright *et al.*

shipped the body to some point of interment not remembered by them at the time the body was demanded by the plaintiffs; that they so notified the plaintiffs and promised them to immediately find the place of interment and without delay return the body; that the plaintiffs expressed themselves as satisfied with this arrangement; that shortly afterwards said body was returned to the defendants, and was taken by the plaintiffs and interred; that the return of the corpse was taken and received by the plaintiffs in full and perfect satisfaction of all wrongs and injuries incident to the mistake made by the defendants.

*Held,* that the last averment of the answer was the statement of a mere conclusion, not warranted by any premises preceding it.

*Held,* also, that the answer was bad, inasmuch as it was the duty of the defendants to procure a return of the corpse, and there is no averment that the plaintiffs agreed with the defendants that they would accept such return in satisfaction of the cause of action upon which the complaint is based.

SAME.—*Instruction to Jury.—Mental Anguish.—Right to Recover for.—Damages.—Presumption as to.*—It was proper for the court to instruct the jury that in assessing the damages they might take into consideration the mental anguish of the plaintiffs, if they suffered any mental anguish on account of the matters set out in the complaint. Where a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do which may result in anguish and distress of mind on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages of that character in the event such damages accrue by reason of a breach of the contract on his part.

From the Marion Superior Court.

*B. F. Davis,* for appellants.
*C. E. Clark,* for appellees.

COFFEY, J.—In this case the complaint alleges that appellees, being husband and wife, on the 10th day of December, 1884, employed the appellants, who were undertakers and funeral directors, in the city of Indianapolis, to take charge of and safely keep, in a secure vault, the body of the deceased daughter of the appellees until such time as they might be prepared and ready to inter the same; that appellants, in pursuance of such employment, took charge and possession of said remains and placed the same in a vault, and that the appellees compensated the appellants to safely keep the said remains therein until such time as they might

be prepared and ready to inter the same; that the said appellants did not safely and securely keep said remains, but carelessly and negligently took or allowed the same to be taken and buried, or otherwise disposed of, and wrongfully refused, and still refuse, to inform the appellees where said remains have been removed to, further than to say : "Your child is in Ohio;" that by reason thereof appellees have suffered great distress of mind, and are damaged in the sum of five hundred dollars, etc.

The court overruled a demurrer to this complaint, whereupon the appellants filed an answer in three paragraphs.

The court sustained a demurrer to the second paragraph of said answer, and a trial of the cause by a jury, upon issues formed, resulted in a verdict for the appellees, upon which the court, over a motion for a new trial, rendered judgment.

The assignment of error calls in question the correctness of the ruling of the court in overruling a demurrer to the complaint, in sustaining a demurrer to the second paragraph of the answer, and in overruling the motion of the appellants for a new trial.

The appellants claim that the complaint is not sufficient :

*First.* Because it does not show a cause of action in favor of both of the appellees.

*Second.* Because the right to control a corpse and superintend the burial thereof is in the executor or administrator and not in the next of kin, and for this reason the complaint does not state a cause of action in favor of either of the appellees.

It is settled that where a complaint does not state a cause of action in favor of all the plaintiffs it is not sufficient to withstand a demurrer.   *Nave* v. *Hadley,* 74 Ind. 155 ; *Yater* v. *State, ex rel.,* 58 Ind. 299 ; *Neal* v. *State, ex rel.,* 49 Ind. 51.    But if any cause of action exists in favor of the appellees in this case, we think it is joint.

It is alleged, substantially, in their complaint, that both

the appellees entered into the contract of bailment therein set out, with the appellants, and that they jointly compenated the appellants for such bailment. It follows, we think, that they are entitled to maintain a joint action for a breach of such contract. The appellants are in error in assuming that the complaint sounds wholly in *tort,* and that there is no community of interest existing in the appellees.

While it may be true that the matters charged partake largely of the nature of a *tort,* yet they are so intimately connected with the contract of bailment alleged in the complaint as to be incapable of separation from it; and in this consists the unity of interest which gives the joint right to prosecute the action.

The second objection urged against this complaint presents a much more difficult question. The decided cases bearing upon the question are somewhat confused, and are not free from conflict. This confusion and conflict arise, no doubt, in the attempt on the part of some of the courts, in this country, to follow the decisions of the courts in England, while other courts have asserted that the rule of decision in that country can have no application in the American courts. It is quite clear to us that but little light can be had upon the question now under consideration from the decisions found in the English reports, for the reason that the jurisprudence of that country is peculiarly compounded, embracing largely the ecclesiastical element not found in our jurisprudence. In that country the partition of judicial authority between the church and the state has materially narrowed the powers and actions of the common law courts. This condition is peculiar to England, and for that reason the English decisions upon questions kindred to the one before us should not exert any controlling influence over the courts of this country, where no such partition exists. It is asserted, and, perhaps, truthfully, that Cuthbert, Archbishop of Canterbury, first introduced burial in churchyards in England, in the year 750.

Renihan *et al. v.* Wright *et al.*

The exclusive power of the ecclesiastics, denominated " Ecclesiastical Cognizance," became both executive and judicial soon after the Norman Conquest. It was executive, in taking the dead body into actual possession and guarding its repose in consecrated ground ; and . it was judicial in deciding all controversies involving the possession or the use of holy places, as well as in adjudicating upon the question as to who should be allowed to lie in consecrated earth ; and, in fact, who should be allowed to be interred at all. The clergy monopolized the judicial power over the subject of burial ; while the secular courts, stripped of all authority over the dead, were confined to the protection of the monuments, or other external emblems of grief erected by the living.

The heir could maintain no action in the common law courts for the disturbance of the remains of his buried ancestors, the remedy for such wrong belonging to the parson, in whom was vested the freehold of the soil in which the burial was made.    Third Institute, page 203.

The power exercised by the ecclesiastical tribunals of England is not spiritual, but temporal and judicial.   It is a legal secular authority which they have gradually abstracted from the ancient civil courts to which it had originally belonged.    It will thus be seen by this brief review of the law in England, upon the subject now in hand, that the decisions of the courts of that country upon the subject of the right of relations to control the bodies of the dead are not authorities in this country.   As we have no division of power between the church and the state in this country, it follows that much of the power exercised by ecclesiastical tribunals in England is vested, of necessity, in the secular courts, here charged with the general administration of the law.

The necessity for the existence and exercise of such power must be apparent to all.   Without it the right to take the exclusive control of a corpse and care for and bury it could not be enforced.   The father could not legally protect the

remains of his children, or the husband of his wife, in the absence of such power. While the law might punish the body-snatcher who desecrated the grave, it would be power-less to restore the body to the relatives. The courts in this State, in our opinion, possess the power to enforce the rights of the appellees in this case to the body of their deceased daughter, if the law gives them the right to its custody, and the right to give it decent burial; and they also possess the power to assess such damages as may accrue to them on ac-count of being deprived of such right.

It will not do to say that the custody of a corpse belongs to the executor or administrator of the deceased, and that it must be interred by him, for under our law no letters of administration can be granted, except to relatives, for the period of twenty days after death. In the event of the ina-bility of the relatives to give the bond required by law, no provision for the burial could legally be made during that period. Certainly, our law-makers did not understand that no one except an executor or administrator had the legal right to the custody and burial of a corpse. Then in whom is the right vested? In the case reported in 4 Bradf.(N. Y.) 503, this ques-tion is fully considered and passed upon by the Supreme Court of New York. In that case, as appears by the report, in widening Beekman street, in the City of New York, the com-missioners, in estimating the assessments, awarded to a cor-poration known as the Brick Presbyterian Church, $28,000, as the value of a certain piece of land taken for that purpose.

The names of all the persons interested in the land not being known the money was paid to the chamberlain of the city of New York, to abide the order of the court. In the parcel of land so taken were embraced certain vaults for the burial of the dead, in which various individuals claimed rights of interment, and the use thereof as vaults for the burial of the dead. The corporation, the Brick Presbyte-rian Church, was entitled to the whole of said sum, subject to the rights of said vault-holders. The question of the

rights of the respective parties in this fund was referred to the Hon. Samuel B. Ruggles, with directions to investigate the facts and report the amount due to each. During his investigation the remains of one Moses Sherwood were identified by his daughter, Maria Smith, who, acting for herself and sister, and for the descendants of her brothers and sisters, five in all, who had died, claimed that such remains should be re-interred in a separate grave, in such suitable locality as she might select; that the existing monument be erected over such grave, and that the necessary expenses be defrayed out of the fund in court. It appeared that Moses Sherwood was buried on the strip of ground taken in widening the street, in the year 1801; that the tomb-stone was erected at the time, to mark his grave, and quietly stood there over his remains until they were thrust aside by the city corporation to give place for the cartways and footwalks of Beekman street as widened.

Mr. Ruggles filed his report and the cause coming on for hearing at the special term of the Supreme Court, in April, 1856, the report, as the law of the case, was affirmed. The report contains a statement of the learned referee's investigation of the law of burial, and it is believed to be the most accurate and elaborate collection and statement of the law upon that subject yet published. In commenting upon the question now under consideration, Mr. Ruggles says: " It will be seen that much of the apparent difficulty of this subject arises from a false and needless assumption, in holding that nothing is property that has not a pecuniary value. The real question is not of the disposable, marketable value of a corpse, or its remains, as an article of traffic, but it is of the sacred and inherent right to its custody, in order decently to bury it, and secure its undisturbed repose. The dogma of the English ecclesiastical law, that a child has no such claim, no such exclusive power, no peculiar interest in the dead body of its parent, is so utterly inconsistent with every enlightened perception of personal right, so inexpressibly

repulsive to every proper moral sense, that its adoption would be an eternal disgrace to American jurisprudence. The establishment of a right so sacred and precious, ought not to need any judicial precedent. Our courts of justice should place it, at once, where it should fundamentally rest forever, on the deepest and most unerring instincts of human nature; and hold it to be a self-evident right of humanity, entitled to legal. protection, by every consideration of feeling, decency and christian duty. The world does not contain a tribunal that would punish a son who should resist, even unto death, any attempt to mutilate his father's corpse, or tear it from the grave for sale or dissection; but where would he find the legal right to resist, except in his peculiar and exclusive interest in the body?"

The final conclusions reached by Mr. Ruggles upon the subject of the legal aspect of the matters refered to him for his report, were:

" 1. That neither a corpse, nor its burial, is legally subject, in any way, to ecclesiastical cognizance, nor to sacerdotal power of any kind.

" 2. That the right to bury a corpse and to preserve its remains, is a legal right, which the courts of law will recognize and protect.

" 3. That such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin.

" 4. That the right to protect the remains includes the right to preserve them by separate burial, to select the place of sepulture, and to change it at pleasure."

Following the law, as announced by Mr. Ruggles in the report above referred to, this court held in the case of *Bogert* v. *City of Indianapolis*, 13 Ind. 134, that the bodies of the dead belong to the surviving relatives, in the order of inheritance, as other property, and that they have the right to the custody and burial of the same.

Our conclusion is, that the custody of the corpse and the right of burial do not belong to the executor or adminis-

trator, but to the next of kin, and that the courts of this State possess the power to protect such next of kin in the exercise of such right.

It follows that the court did not err in overruling the demurrer to the complaint in this cause.

The second paragraph of the answer avers that the appellants prepared the corpse named in the complaint for burial on or about the 10th day of December, 1884, and placed the same in a vault wherein were placed the corpses of other children of like age, and in all respects prepared in the same manner for interment; that in consideration therefor the appellees promised and agreed to pay the appellants a fair and reasonable price, which was twenty dollars; that on or about the 29th day of April, 1885, the appellees notified the appellants that they desired to have their said child interred, when, for the first time, they discovered that said body and corpse had been, by the appellants, shipped, by mistake, to some point for interment not then remembered by them; that they then and there so notified the appellees, and promised them to immediately find the place of the interment of said body, and without delay return the same to appellees, to which the appellees expressed their satisfaction; that on the 4th day of May, 1885, they learned that said corpse had been shipped to and interred at Ohio, in the State of Pennsylvania, and so notified the appellees, and informed them that they would have said corpse returned by express at their expense, to wit, the sum of $50, to which the appellees assented; that immediately thereafter, and before said corpse had time to arrive at the city of Indianapolis, to wit: on the 5th day of May, 1885, the appellees commenced this action; that afterwards, on or about the 10th day of May, 1885, the body of said child was returned to appellants, and was taken by the appellees and interred; all of which was taken and received by the appellees in full and perfect satisfaction of all wrongs and injuries incident to the mistake made by the appellants in sending said body to the town of Ohio, in place

of one of said other like corpses in their said vault; that appellees have failed to pay said sum of $20, or any part thereof, although the same was past due at the time of the commencement of this suit.

We do not think the court erred in sustaining a demurrer to this answer. It is drawn, and proceeds upon the theory that the appellees accepted the acts of the appellants in the matter of the return of the corpse in full accord and satisfaction of the cause of action set up in the complaint. The averment found in the answer, at its close, to the effect that a return of the corpse was taken and received by the appellees in full and perfect satisfaction of all wrongs and injuries incident to the mistake, etc., made by the appellants, is the statement of a mere conclusion, not warranted by any premises preceding it. It was the duty of the appellants to procure a return of the corpse; and there is no averment in the answer that the appellees agreed with the appellants that they would accept such return in satisfaction of the cause of action upon which the complaint is based.

The only matter urged under the assignment of error, calling in question the action of the court in overruling the motion for a new trial, relates to the instructions in the cause. The court instructed the jury that in assessing the damages they might take into consideration the mental anguish of the appellees, if they suffered any mental anguish on account of the matters set out in the complaint.

In this instruction we do not think the court erred. The case is analogous in principle to the case of *Reese* v. *Western Union Tel. Co.*, 123 Ind. 294. In that case it was held that the telegraph company was liable for the mental anguish occasioned by its failure to deliver a message in case of extreme illness. The doctrine announced in that case is fully supported by the cases of *Western Union Tel. Co.* v. *Cooper,* 71 Texas, 507; *Hays* v. *Houston, etc., R. R. Co.,* 46 Texas, 272; *Wadsworth* v. *Western Union Tel. Co.,* 86 Tenn. 695; *Beasley*

v. *Western Union Tel. Co.,* 39 Fed. Rep. 181.    The cases rest upon the reasonable doctrine that where a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do which may result in anguish and distress of mind on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages of that character in the event such damages accrue by reason of a breach of the contract on his part.    The case of *Wadsworth* v. *Western Union Tel. Co., supra,* is, in some of its features, much like the case now before us.    In that case the following telegram was sent to Mrs. Wadsworth, the sister of the deceased :

"MEMPHIS, October 3, 1887.

"*To Mrs. T. J. Wadsworth, Byhalia, Miss. :*

"Mr. Howell died this morning.    Advise us what to do. Will look for some one on morning train.

"R. C. WALDEN."

The company negligently failed to deliver this telegram. In a' suit by Mrs. Wadsworth against the telegraph company, in which she sought to recover damages on account of injury to her feelings in being deprived of the privilege of being present to take charge of the body and to superintend its burial, the learned judge, who delivered the opinion of the court, said :  " To hold that the defendant is not liable in this case for the wrong and injury done to the feelings and affections of Mrs. Wadsworth by its default, would be to disregard the purpose of the telegrams altogether, and to violate the rule of law which authorizes the recovery of damages appropriate to the objects of the contract broken."

When the appellants contracted with the appellees to safely keep the body of their daughter until such time as they should desire to inter the same, they did so with a knowledge of the fact that a failure on their part to comply with the terms of such contract would result in injury to the feelings of the appellees, and they must, therefore, be held

to have contracted with reference to damages of that character, in the event of a breach of the contract on their part.

After a careful examination of all the questions presented by the record, in this cause, we find no error for which the judgment should be reversed.

