JOHN CAVANAGH & another *vs.* SAMUEL H. DURGIN & others.

Suffolk.    January 28, 29, 1892. — June 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Trespass — Damages — Mistaken Remedy.*

The acts of the defendants of which the plaintiffs complained, in an action of tort in the nature of trespass *quare clausum*, were the building of a dam and the digging of a trench upon the plaintiffs' premises. *Held*, that the damages which the plaintiffs were entitled to recover were the expenses of removing the dam and filling up the trench, and of restoring the premises to their former condition, and the loss of the use of them during the time which this would reasonably require.

A. built a dam and dug a trench upon the premises of B. Instead of removing the dam and filling up the trench, B. sought to recover damages of a city for what A. had done, but the court held that the city was not liable. *Held*, in an action of tort by B. against A. in the nature of trespass *quare clausum*, that the fact that B. mistook his remedy in the former suit could not enhance the damages for which A. was liable.

TORT, in the nature of trespass *quare clausum*. The plaintiffs discontinued their action against all the defendants except Frederick G. Whitcomb. Trial in the Superior Court, before

*Barker*, J., who reported the case for the determination of this court, in substance as follows.

No evidence was offered except the report and the supplementary report of an auditor to whom the case had been previously committed by the court under the ordinary rule, and except an offer to prove that two or three years before the bringing of this action the plaintiffs sought, in an action against the city of Boston, reported 139 Mass. 426, to recover damages for injuries now complained of in this action.

The material parts of the auditor's report, after reciting the orders of the aldermen and common council, and petitions and reports, and the doings of Henry M. Wightman, as stated in *Cavanagh* v. *Boston*, 139 Mass. 426, were as follows:

" At the time of the acts complained of, the plaintiffs were, and have ever since been, the owners in fee of the northerly half of Wales Island and the flats adjacent thereto, situated in South Bay, in the city of Boston. Said Wales Island is a piece of upland marsh, and said northerly half thereof contains about forty-four thousand feet of upland, and there are about seventy thousand feet of flats adjacent and appurtenant thereto. The plaintiff John Cavanagh and his brother occupied together said upland for the storage of lumber and stock, and said flats for the storage of rafts, piles, and scows; and they there did a large pile business. Said flats were so landlocked and protected from wind, storm, and unusual roughness of water, as to form a very necessary and valuable place for the storage of rafts, piles, and scows, and for the conduct of a pile business. For some time previous to 1880, great complaint had been made to the city of Boston of a nuisance in a part of said bay above said Wales Island, being on flats in said bay south of the plaintiffs' flats and away from them. No nuisance existed on the plaintiffs' flats. In June, 1880, an order requesting the board of health to cause said nuisance to be abated was passed by both branches of the city government of Boston. In July, 1880, an order making a special appropriation for the purpose of constructing a dam across South Bay to abate said nuisance, and authorizing said board of health to have said dam constructed, was passed by both branches of said city government. At a meeting of the board of health, September 6, 1880, it was voted to request the city engineer, then Henry M. Wightman, to abate

said nuisance by erecting a dam according to a plan submitted by him. Thereafter said Wightman proceeded to ask for bids for the construction of said dam, and to make contracts for the labor and the materials to be used. A dam was then built in South Bay, — being begun and finished, so far as it ever was finished, in the fall months of 1880, — commencing upon that part of Wales Island belonging to the plaintiffs, and running three hundred feet in and upon the flats appurtenant to their upland to Pine Island Channel, so called, in and across said channel, and for some two hundred feet to the embankment of the New York and New England Railroad. The entire length of said dam was five hundred and twenty-two feet, with sluices twenty-four feet in length, and consisted of a line of sheet piling driven between two rows of spruce piles. Said piles were driven in pairs fifteen feet apart, except at the sluices, where they were driven full six feet apart. Said sheet piling was securely spiked near the top to a double line of spruce stringers, which were bolted to the piles with one inch in diameter wrought-iron bolts. A trench was dug some four feet deep, eight feet long, and two feet wide, upon the upland of the plaintiffs, and the piles and said pile sheeting were driven from about seven to ten feet into the flats.

" The defendant Whitcomb made said Wightman a bid for doing part of the work on said dam, which bid was accepted by said Wightman. And on or about October 4, 1880, defendant Whitcomb went upon said South Bay, and upon the upland and flats of the plaintiffs, with tools, timber, piles, and men, and constructed in said upland and over and in the plaintiffs' flats three hundred feet of said dam. And defendant Whitcomb did trespass upon the close of the plaintiffs, as they have declared. The fair rental value of the part of said Wales Island belonging to the plaintiffs is $500 per annum. Said dam and construction has never been removed, and is still standing upon said upland and flats."

The auditor was of " opinion that it was the duty of the plaintiffs to remove, as quickly as they reasonably could, said construction from their upland and flats, so as to diminish as far as they could the damage that might be caused by the building of said dam; that at least three months should be allowed the plaintiffs in which to remove said dam; and that the plaintiffs were entitled to the reasonable cost of removing so much

thereof as was upon their land and flats, and that the materials thereof removed were valueless."

The auditor found that reasonable cost to be $1,192.50, to which sum was to be added the loss of the rental value of the close for three months, making the total sum of $1,317.50, which sum the auditor found to be due the plaintiffs for damage done them. The auditor said: " It was claimed by the plaintiffs that they were entitled, in a fair estimation of damages, to the rental value of their property from the day they say it became valueless to them, — say, from October 4, 1880, to the date of the writ in this action, viz. to September 2, 1886. Being of contrary opinion, I have found them entitled only to the amount of said rental value for the time it would reasonably take to remove said construction on their land, to wit, for three months. If the court is of opinion that the plaintiffs were entitled to receive said rental value from said October 4, 1880, to said September 2, 1886, then to the aforesaid sum of $1,192.50 should be added the sum of $2,958.26, making in the total the sum of $4,150.76, which last named sum, in such case, I find to be due the plaintiffs in this action."

By the supplementary report the auditor found and reported that the defendant Whitcomb was liable for one half part of the damages which the plaintiffs are entitled to recover, and that the defendant Edwards (since discontinued against) was liable for the other half part thereof.

The plaintiffs requested the judge to rule, and to instruct the jury, that they were entitled to recover a verdict for $2,075.38 and interest, being the half part of the larger sum found by the auditor; and the defendant Whitcomb requested him to rule that the plaintiffs were entitled to recover only the sum of $658.75 and interest, being the half part of the smaller sum found by the auditor. The judge ordered the jury to return a verdict for the latter amount. If the ruling was right, judgment was to be entered on the verdict, with proper interest; if wrong, and the plaintiffs' request for ruling should have been granted, the verdict was to be set aside, and judgment entered for the plaintiffs in the sum of $2,075.38, being one half of the larger sum found by the auditor, with interest.

*C. W. Bartlett & E. R. Anderson,* for the plaintiffs.

*H. N. Sheldon,* for the defendants.

MORTON, J.   The acts of the defendants of which the plaintiffs complain were the building of a dam, and the digging of a trench upon their premises.   These acts were unlawful and constituted a trespass, and the plaintiffs could at any time have removed the dam and filled up the trench.   *Cavanagh* v. *Boston*, 139 Mass. 426.   The defendants could not have entered to do either without being guilty of another trespass.   The damages which the plaintiffs were entitled to recover, therefore, were the expenses of removing the dam and filling up the trench, and of restoring the premises to their former condition, and the loss of the use of them during the time which this would reasonably require.   *Loker* v. *Damon*, 17 Pick. 284.   *Sibley* v. *Hoar*, 4 Gray, 222.   *Holt* v. *Sargent*, 15 Gray, 97.   *Miller* v. *Mariner's Church*, 7 Greenl. 51.   These would be the direct and proximate results of the acts of the defendants.

Instead, however, of removing the dam and filling up the trench, the plaintiffs sought to recover damages of the city of Boston for what the defendants had done.   But this court held in *Cavanagh* v. *Boston*, *ubi supra*, that the city of Boston was not liable.   The plaintiffs do not now contend that they are entitled to recover of the defendants damages as for a permanent obstruction of the premises, but contend that, having sought with reasonable promptness and in good faith a remedy for the wrong for which it turns out the defendants are liable, they should be allowed to recover of them, in addition to the expense of removing the dam and filling up the trench, for the loss of the use of the premises to the date of the writ in this case.   But the fact that the plaintiffs mistook their remedy cannot enhance the damages for which the defendants are liable.   The plaintiffs were presumed to know the law, and the delay was due to their own error, and not to any fault on the part of the defendants. We think, therefore, in accordance with the report, the entry must be,

*Judgment on the verdict, with interest, and it is so ordered.**

---

\* A similar decision was made on the same day in Suffolk in the case of JOHN CAVANAGH & another *vs.* ELMER A. MESSINGER & another.

The report by *Barker*, J. recited a state of facts almost identical with that recited in the above case of *Cavanagh* v. *Durgin*, except that it appeared that

---

Henry M. Wightman, the defendants' testate, entered upon the plaintiffs' premises, made surveys to find the location of the dam, and prepared plans and specifications therefor, and made contracts with Whitcomb and Edwards for the construction of the dam. The auditor found that " Wightman had direct supervision and control of and over the work of building this dam, and that he did thereby trespass upon the close of the plaintiffs, as they have declared." The requests for rulings and the rulings given were similar to those in *Cavanagh* v. *Durgin, ante,* 466.

This case was argued by the same counsel as in that case.

MORTON, J. This case is governed by the case of *Cavanagh* v. *Durgin.* In accordance with the report, the entry must be,

*Judgment on the verdict, with interest.*