ORR *v.* DAYTON AND MUNCIE TRACTION COMPANY.

[No. 21,893. Filed November 22, 1911. Rehearing denied June 4, 1912.]

1. ADJOINING LANDOWNERS.—*Lateral Support.*—*Damages.*—The proper element of damages for removal of lateral support from land is the difference in the value of the land from which the support is removed, and, such removal being the invasion of a natural right, damages may be recovered therefor irrespective of negligence. p. 46.

2. DEAD BODIES.—*Burial.*—*Disturbance.*—*Actions.*—The kindred are entitled to have the ashes of their dead protected, and it seems reasonable that a disturbance of that right would be the

subject of injunctive relief, since an action for damages would not be an adequate remedy. p. 47.

3. DEAD BODIES.—*Protection.—Public and Private Rights.—Statute.*—While the criminal statutes (§§2690, 2691 Burns 1908, §§2165, 2166 R. S. 1881) protect the burial places of the dead, they do not present the question of private rights in the bodies of the dead, which, though not property in the general sense of property, are the subject of rights which the courts will protect by proper actions. p. 48.

4. ADJOINING LANDOWNERS.—*Lateral Support.—Right of Landowner to Protect Himself Against Injury to Lateral Support to Adjoining Land.— Contract.— Consideration.*— Where plaintiff granted the right to defendant to remove gravel from a pit on his land near an adjoining cemetery to which he owed the duty of giving lateral support, he had a right to protect himself by contract with the defendant as against liability for the removal of such lateral support, and even though he was a joint tort feasor with the defendant in the removal thereof he had a right to protect himself to the extent of his liability, and such liability resting upon him afforded a sufficient consideration for defendant's agreement not to deprive the cemetery of lateral support. pp. 48, 49.

5. CONTRACTS.—*Consideration.—Right to Protect Burial Place.*— Where a landowner granted the right to a railroad company to remove gravel from a pit on his land near an adjoining cemetery in which some of his kindred were buried, the protection of the cemetery and its fence was in itself a sufficient consideration to support defendant's covenant not to destroy the cemetery's lateral support. p. 49.

6. ADJOINING LANDOWNERS.—*Lateral Support.—Persons Liable for Injury.*—Where a landowner authorizes an excavation to be made on his land that must prove injurious to the adjoining land, the fact that the work is done by an independent person or licensee does not relieve him of liability for the injurious consequences. p. 50.

7. ADJOINING LANDOWNERS.—*Lateral Support.—Injury.—Measure of Damages.*—Although it is the general rule that the measure of damages for the removal of lateral support from adjoining land is the diminution of the value of the land, the measure, where the cost of restoring the support is less than the diminution in value, is the cost of restoring such support. p. 51.

8. ADJOINING LANDOWNERS.—*Removal of Lateral Support by Lessee. —Action by Lessor for Removal of Lateral Support from Adjoining Land.—Damages Recoverable.*—Where a landowner, who was bound to maintain a line fence between his land and an adjoining cemetery, leased to a railroad company the right to re-

move gravel from a pit on his land, on condition that the lessee would not destroy the lateral support of the cemetery, and the lessee excavated so near to the line that earth from the cemetery caved and slipped into the pit and destroyed the fence, and the lessor has not been called upon to respond in damages or to restore the lateral support to the cemetery, no right of action against the lessee on the breach of the contract shown has accrued to him for the loss suffered by the cemetery or for the cost of a retaining wall, but he can recover for the destruction of the fence and the necessary support therefor. p. 52.

9. ESTOPPEL.—*Equitable Estoppel.—Grounds.*—Where a landowner granted to a railroad company the right to remove gravel from a pit on his land near an adjoining cemetery, on condition that the lateral support of such cemetery would not be destroyed, and a line was established to which the company might excavate without injury to the cemetery, and the company made excavation and removed gravel from beyond the line, thereby causing earth from the cemetery to cave and slip into the pit, he was not estopped, by receiving pay for the gravel removed from beyond the line, from recovering for the breach of the contract. p. 53.

From Randolph Circuit Court; *John W. Macy,* Judge.

Action by George T. Orr against the Dayton and Muncie Traction Company. From a judgment for defendant, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*George T. Orr* and *Orr & Orr,* for appellant.

*Theodore Stockney* and *Don P. Shockney,* for appellee.

MYERS, J.—Appellant was the owner of eighty acres of land, lying lengthwise north and south, in the northeast corner of which was a gravel-pit some thirty feet in depth; adjoining appellant's land on the east was another eighty-acre tract of land, in the northwest corner of which was a public cemetery, which extended south from the northwest corner of the tract ten rods and east so as to include about one acre of land, in which cemetery were interred, among a number of other persons, the remains of the father and mother, a brother and four of the children of appellant. The remains of his kindred were near the west line of the cemetery, within seven feet of appellant's east line, and there was a monument five or six feet high at the grave of

appellant's brother alongside of whom lie the remains of one of appellant's children, and there were numerous other interments and some 200 monuments in the cemetery. The locations of the gravel-pit and of the cemetery were examined by appellee's agent in company with appellant before the contract hereinafter referred to was executed. It does not appear whether appellant owned the lot in the cemetery.

On March 18, 1905, appellant leased to appellee in writing the right until March 18, 1906, to remove gravel from the deposit on certain portions of his land, and by the terms of the contract it was provided that "the second party [appellee] * * * shall not excavate close enough to the line of the adjacent premises on the east to deprive it of lateral support," and that appellant should select a civil engineer to act with the engineer of appellee, and the two should cross-section the ground or pit before any earth should be removed, and upon the taking by appellee of all the material it desired the two engineers, one selected by each party, should compute the amount taken. The contract also provides that the material should be taken from the "east side of the open pit in the northeast corner, and from a pit which may be opened to the south thereof and about midway of the tract, but said company shall first exhaust the material in said north pit, and after that may take from the south pit." Under this contract, two engineers, selected under the terms of the contract, cross-sectioned the ground for the quantity of gravel removed, and in doing so set stakes over various portions of the area, the east line of which stakes was eight or ten feet west of the fence, which was a good post and wire fence on the east line of appellant's land. Appellant was not present when these stakes were set, but these stakes were treated by the parties as the line. Appellee went on the ground with a steam shovel, and excavated the earth to a depth of about thirty-two feet, almost perpendicularly along appellant's east line adjoining the cemetery, and quit excavating in August, 1905, and in doing the work appellee did

not cease removing the ground until the sliding gravel undermined the banks until they projected three or four feet, and sloughed off beyond the fence line, and earth from the cemetery fell into the pit. The character of the earth, owing to its being gravel and sand, was such as to cave, and assume a slant, until at the time the suit was begun, December, 1905, it had caved three feet beyond the fence line from the cemetery, and by May, 1907, it had sloughed off into the cemetery three and a half feet for a distance of fifteen to twenty feet, and to or within the fence line fifty-five feet longitudinally. Stakes set on the east by the engineers in cross-sectioning were estimated by them at the time to be as close as excavating could be done. Excavation had gone two or three feet beyond this line of stakes before sliding occurred, and at the bottom of the pit within ten feet of the cemetery line, and this sliding had undermined the banks until they fell in beyond the cemetery line. Appellant was under agreement with the adjoining land owner to maintain the fence on the north half of the east line of his land, though this only appears from the evidence. The caving took out the posts and fence a good part of the distance along the cemetery, and it is in evidence that the earth will cave ten feet back from the cemetery line, and take out all the fence, and that it will be impossible to construct and maintain a fence there, at least without digging and leveling, and that the sloughing will necessarily continue until monuments and graves in the cemetery will fall in, and that such result was reasonably to be apprehended from the nature of the earth and the depth of the pit, and that the earth will continue to slide in, owing to the gravelly character, until it shall assume a slope of between one and two feet horizontal to one foot vertical, and that it is possible to protect the adjoining land, either by a slope of that angle, or by a wall and a sloping bank on such grade. The expense of a retaining wall to prevent further caving is $842, and the difference in the value of the land $800, owing to the condition in which

the pit left it. Five hundred dollars was the amount given in evidence as the damages to appellant's land from the land on the east falling into his land, and his liability in damages therefor. Appellant lived near the pit, and was frequently at it. Before appellee began excavating, the west line of the pit was thirty feet deep, and from fifty to sixty feet from the cemetery line, and the character of the earth disclosed. When the first caving occurred beyond the cemetery line, appellant ordered appellee to desist, and it did so. Appellant received pay for the gravel removed.

Appellant instituted this action for breach of the covenant not to "excavate close enough to the line of the adjacent premises on the east to deprive it of lateral support," claiming the measure of damages to be the cost of a supporting wall or bank. The trial court found against him, denying all recovery, and he appeals, assigning error on overruling his motion for a new trial, which presents the question of the decision being contrary to law.

The complaint alleges damages to the land of appellant from earth from the adjoining land and cemetery falling into it from lack of support, and damages to him and his land from the insecurity of the graves, from the removal of the support to the adjacent land, which can only be supplied at great expense, and for the breach of contract in depriving the adjoining premises of their lateral support, to his damage in the sum of $1,000, and neglect, refusal and failure to erect a wall, or protect the abutting premises, or restore its lateral support, or repair the injury. Prayer for $1,000 damages.

The complaint is not carefully drawn so as to distinguish alleged damage to appellant's land by reason of the earth from the adjoining land falling into his land, or the falling in of the graves of those interred in the cemetery, on falling in of the fence and fence support, or the damages from breach of contract proper, but the evidence seems to have been given on the theory of damages for the breach of con-

tract, and appellant so claims his theory of the complaint to be, and we so treat it.

There was a breach of the contract in excavating, so that the support to the adjoining property was removed, but the facts do not show such injury to his land or damage to him as to justify a recovery at this time on that ground, except as to removing fence support. There may have been special damage from the breach of the contract with respect to cutting beyond the stakes, undermining the fence, and rendering it impossible, difficult or expensive to construct or maintain a fence where appellant was under obligation to maintain it, but no damage is pleaded in those particulars, and there is no evidence on the question of the expense of restoring the fence, or placing the earth in condition to maintain it. The evidence given, and that offered on the question of the difference in the value of the land, embraces many items which were the direct result of the contract, and to be expected to occur, such as a large unsightly excavation, the deposit of gravel over the land outside the pit from grading and laying the track, and hauling over it, and interruption of the fence. The nearest approach to a possibly proper element of damages is that of $500 owing to his liability for damages from removing the lateral support to the land on the east. It seems to be settled in this State that the

1. proper element of damages for removal of lateral support from its natural state is the difference in the value of the land from which the support is removed, irrespective of negligence, as being the invasion of a natural right. *Schmoe* v. *Cotton* (1906), 167 Ind. 364, 368, 79 N. E. 184; *Moellering* v. *Evans* (1889), 121 Ind. 195, 22 N. E. 989, 6 L. R. A. 449; *City of Aurora* v. *Fox* (1881), 78 Ind. 1; *Payne* v. *Moore* (1903), 31 Ind. App. 360, 66 N. E. 483, 67 N. E. 1005; *Bohrer* v. *Dienhart Harness Co.* (1898), 19 Ind. App. 489, 49 N. E. 296; *Block* v. *Haseltine* (1892), 3 Ind. App. 491, 29 N. E. 937.

Three questions are presented: (1) As this is not an

action by the adjoining owner for damages caused by the removal of support to his land, Does the action lie at the suit of appellant, on the express covenant?   (2) Is there such liability on the part of appellant, from having given assent to and contracted for the removal of the earth so as not to deprive the adjacent premises "of lateral support," that he has an interest to protect that liability as furnishing a consideration for the contract? and (3) if so, What is the measure of damages?   Cases where the action is by the party who removes the support are naturally of rare occurrence, and probably arise, if at all, out of covenants for protection or indemnity.   The character of the earth, the contiguity of the cemetery, and of burials indicated by monuments, and the result of deep excavation in gravelly soil, were matters open to ordinary observation, as well as the results ordinarily and reasonably to be apprehended, and within the contemplation of the parties in making the contract with its restrictions, but it is urged that the restriction as to preservation of lateral support was not one for the benefit of appellant, except as the element of regard for the resting place of the dead was involved, and that while he might have a right of action for molestation of the graves of his kindred, that that action in the very nature of things would be one for mere sentiment or mental anguish, and would not furnish an element of appreciable damages, by way of money compensation.   We are not able to assent to the view that an

2. action for damages would be the sole remedy, nor do we hold that there is such a remedy, but it certainly would not be an adequate remedy, for the kindred are entitled to have the ashes of their dead protected, whilst an action for damages in that particular would be so incapable of measurement that it must necessarily be that only nominal damages could be awarded, neither solacing the living nor protecting the dead.   That it would be the subject of injunctive relief seems reasonable. *Farrand* v. *Marshall* (1855), 21 Barb. 409; *Croasdale* v. *Lanigan* (1891), 36 N. Y. St. 575, 13

N. Y. Supp. 31; *Trowbridge* v. *True* (1884), 52 Conn. 190, 52 Am. Rep. 579; *Siddons* v. *Short, Harley & Co.* (1877), 2 C. P. D. 572; *In re Girard* (1851), 5 Clark (Pa.) 68, 73.

3.   The sepulchers of the dead, and the monuments thereof, and the fences or other structures in cemeteries are protected by the criminal statutes. §§2690, 2691 Burns 1908, §§2165, 2166 R. S. 1881.

But they do not present other than public rights. They do not present the question of private rights, for while there cannot be said to be property in the bodies of the dead in the general sense of property, the bodies of the dead are the subject of rights which the courts ought to, and will respect, by proper actions. *Burney* v. *Children's Hospital* (1897), 169 Mass. 57, 47 N. E. 401, 38 L. R. A. 413, 61 Am. St. 273; *Weld* v. *Walker* (1881), 130 Mass. 422, 39 Am. Rep. 465; *Pierce* v. *Proprietors, etc.* (1872), 10 R. I. 227, 14 Am. Rep. 667, and note; *Boyce* v. *Kalbaugh* (1877), 47 Md. 334, 28 Am. Rep. 464; *Davidson* v. *Reed* (1884), 111 Ill. 167, 53 Am. Rep. 613; *Beatty* v. *Kurtz* (1829), 2 Pet. *566, 7 L. Ed. 521.

Whatever may be the effect of the decision in *Western Union Tel. Co.* v. *Ferguson* (1901), 157 Ind. 64, 60 N. E. 674, 60 N. E. 1084, 54 L. R. A. 846, on the question of damages for personal anguish, as held in *Renihan* v. *Wright* (1890), 125 Ind. 536, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. 241, and *Reese* v. *Western Union Tel. Co.* (1890), 123 Ind. 294, 24 N. E. 163, 7 L. R. A. 583, as applied to that question alone, the question here is one of protection of a right, and an interest in the dead against the desecration of the graves. While

4.   it may be, and probably is true, as a general rule, that appellant from the mere fact that he granted appellee the right to excavate the gravel might not be liable because it was not done by himself, and he could not authorize another to commit a trespass, but by an independent person as grantee of the right, or purchaser of the gravel, yet appellant apparently acquiesced in the line of stakes that was set

in cross-sectioning the land as the line to which appellee might excavate. Under the evidence in this case, if appellee had stopped the excavation at such line, the earth would still have slumped from the cemetery, anywhere from seven to fifteen feet, and it is a fair deduction that in authorizing the cutting to such line, appellant was a joint tort feasor, and liable with appellee as to the result which might ensue to the cemetery property from authorizing cutting to that point, hence the appellant had a direct and pecuniary interest to protect himself from liability to that extent at least, if such line could be said under the evidence, as appellee insists it to have been, an agreed line; and if not an agreed line, then the right to protect himself wholly against the removal of the lateral support by reason of his own responsibility. *City of Anderson* v. *Fleming* (1903), 160 Ind. 597, 67 N. E. 443, 66 L. R. A. 119; *City of Evansville* v. *Senhenn* (1898), 151 Ind. 42, 47 N. E. 634, 51 N. E. 88, 41 L. R. A. 728, 68 Am. St. 218; *Sessengut* v. *Posey* (1879), 67 Ind. 408, 33 Am. Rep. 98.

The provision of the contract, as to first exhausting the gravel from the north pit, must be taken in connection with the qualifying phrase, so as not "to deprive it [the property on the east] of lateral support." Under these conditions there was a consideration for the covenant as being one of protection to the cemetery and its fence on the one hand, and of protection of himself from liability on the other, either of which furnished a sufficient consideration for the agreement. The result in this case is a serious inroad on the cemetery lot at the time the action was begun, increasing in seriousness as the elements and natural forces continue to disintegrate the soil and bank, and precipitate it by the force of gravity to the bottom of the pit. It was both appellant's and appellee's duty to use every reasonable effort to prevent or arrest the caving in of the bank, and the fact that the full injury has

not been accomplished is no answer to the claim of appellant that appellee shall take the proper steps to arrest the injury, or recompense him for doing so, to the extent, at least, that his contract protects him, if the cause is otherwise sustainable.

It is also urged, that as the contract does not stipulate for damages, or for the construction of a supporting wall or embankment, and specific performance could therefore not be decreed, that there can be no recovery, and that the contract is a *nudum pactum,* or if there could be, it would not be a right of recovery in appellant, but in the adjoining landowners, and the measure of damages the diminution in the value of the adjoining land. Appellee concedes that there would be a right of action in the adjoining landowner against both appellant and appellee, and we think appellee is right in that concession, and that it furnishes a consideration and basis for the contract. The contract provides that the natural lateral support shall not be molested, and if, as here, it has been, the law implies a liability to provide support, or pay for the cost of it, or pay the damages, and so far as appellee is concerned, the question is whether appellant can now enforce the obligation, and the cost of the support. Except for the contract, doubtless only the adjoining owner could sue, but as we have seen, appellant was entitled to protect himself by contract against liability, and did so. If the line fixed on as the one to which

6. excavation might go was such that by not excavating beyond it, there would have been no caving from the adjoining land, possibly there would be no liability on the part of appellant under the rule in *Bohrer* v. *Dienhart Harness Co., supra, Gilmore* v. *Driscoll* (1877), 122 Mass. 199, 23 Am. Rep. 312, and *Williams* v. *Kenney* (1853), 14 Barb. 629. But where one orders, or assents to, or directs a work to be executed, from which, in the natural course of things injurious consequences to his neighbor must be expected, as here, by directing a cutting so

close to a line, and so deep, that caving must result, unless means are adopted to prevent it, he is bound to see that that is done which will prevent the mischief, and cannot relieve himself of his responsibility by employing some one else to do the work, or whether it is done by an independent person or licensee. Responsibility attaches to him by fixing the line. There is an obvious difference between committing work to one to be done from which if properly done no injury can arise, and turning over to him work which in its doing must be injurious, even though properly done. *City of Anderson* v. *Fleming, supra; Cabot* v. *Kingman* (1896), 166 Mass. 403, 44 N. E. 344, 33 L. R. A. 45; *Bower* v. *Peate* (1876), 1 Q. B. D. 321; *Kistler* v. *Thompson* (1893), 158 Pa. St. 139, 27 Atl. 874; *Mamer* v. *Lussem* (1872), 65 Ill. 484; *Little Schuylkill, etc., Coal Co.* v. *Tamaqua* (1860), 1 Walker (Pa.) 468; *Harrison* v. *Kiser* (1887), 79 Ga. 588, 4 S. E. 320; *Watson Lodge, etc.,* v. *Drake* (1895), 29 S. W. (Ky.) 632.

A more serious question arises over the proposition as to whether this action is prematurely brought, and the question of damages. The weight of authority, and the rule in this State seems to be, that the measure of damages is the diminution of the value of the land from which the support has been removed. *Schmoe* v. *Cotton, supra; Moellering* v. *Evans, supra;* 1 Cyc. 785.

The writer is not able to concur in the rule as stated, other than as a general statement, and believes that a modified rule not inconsistent with it, and more in consonance with the established doctrine, that the right of support is an absolute right, so far as the soil in its natural condition is concerned, and that being true, it is a continuing right, that the measure of damages is the cost of restoring the support, where the cost is less than the diminution in the value of the land, in order that the cost may be kept at the minimum, upon the theory that the right of use of one's own property as he sees fit, so long as he does not injure another, being also an absolute right, he ought only to be called on

to respond in damages in the smallest amount which will adequately protect his neighbor. *Hartshorn* v. *Chaddock* (1892), 135 N. Y. 116, 31 N. E. 997, 17 L. R. A. 426; *Seely* v. *Alden* (1869), 61 Pa. St. 302, 100 Am. Dec. 642; *Lentz* v. *Carnegie Bros. & Co.* (1892), 145 Pa. St. 612, 23 Atl. 219, 27 Am. St. 717; *Stevenson* v. *Ebervale Coal Co.* (1902), 201 Pa. St. 112, 50 Atl. 818, 88 Am. St. 805; *Sabine, etc., R. Co.* v. *Joachimi* (1883), 58 Tex. 456; *Slavin* v. *State* (1897), 152 N. Y. 45, 46 N. E. 321; *Cavanagh* v. *Durgin* (1892), 156 Mass. 466, 31 N. E. 643; *Ziebarth* v. *Nye* (1890), 42 Minn. 541, 44 N. W. 1027; *Larsen* v. *Oregon, etc., R. Co.* (1890), 19 Or. 240, 23 Pac. 974; *Vermilya* v. *Chicago, etc., R. Co.* (1885), 66 Iowa 606, 24 N. W. 234, 55 Am. St. 279; *Fort Scott, etc., R. Co.* v. *Tubbs* (1892), 47 Kan. 630, 28 Pac. 612; *Galveston, etc., R. Co.* v. *Ware* (1887), 67 Tex. 635, 4 S. W. 13; *Walters* v. *Chamberlin* (1887), 65 Mich. 333, 32 N. W. 440; *Barrick* v. *Shifferdecker* (1890), 123 N. Y. 52, 25 N. E. 365; *Silver Creek Nav., etc., Co.* v. *Mangum* (1887), 64 Miss. 682, 2 South. 11; *Weir* v. *Plymouth Borough* (1892), 148 Pa. St. 566, 24 Atl. 94; *Loker* v. *Damon* (1835), 17 Pick. 284; *Marvin* v. *Pardee* (1872), 64 Barb. 353; *Richardson* v. *City of Webster* (1900), 111 Iowa 427, 82 N. W. 920; *Thompson* v. *Milwaukee, etc., R. Co.* (1870), 27 Wis. 93; *Stimmel* v. *Brown* (1885), 7 Houst. (Del.) 219, 30 Atl. 996. This rule in nowise conflicts with the reason of the general rule, that the act may be of such a character as to affect the adjoining land very slightly, while restoration might be very costly, but is still within the general rule. In *City of Aurora* v. *Fox* (1881), 78 Ind. 1, this court held that evidence was properly admitted as to the cost of constructing a retaining wall along a lot line, but that it was for the jury to say whether such wall was necessary.

The adjoining landowner, perhaps a cemetery association, as the complaint alleges it to be a public burying
8.   ground, is not a party to the action, and whether it or the landowner may claim a retaining wall or diminu-

tion of the value of the land we cannot know. Appellant has not built a wall or other support to the land, and may never be called on to respond in damages, or to build such a wall, and while there has been a breach of the contract shown, a right of action for damages for a retaining wall has not accrued to him, unless a retaining wall is necessary in order that he may construct and maintain a fence. He does show a right of action for the destruction of the necessary support for a fence, by a wall if necessary, and for destruction of the fence itself, but he has not pleaded damages as to either, but it is shown by the evidence that the fence is destroyed, and that a fence cannot be constructed or maintained for a distance of 100 feet along the line, without a wall or other expense. If it cannot be, it must be clear that the damages which have accrued are to both the adjoining property and to him, and it appears, without contradiction, that appellee excavated three feet beyond the line of stakes, and as to that cutting, it was more than a nominal trespass, involving more than nominal damages. It necessarily would push the cutting just that much farther east, and increase the damage to the adjoining land, and possibly appellee's liability, and there is some evidence of damage to appellant's land beyond nominal damages.

Appellant, however, is not estopped as against appellee by receiving the money for the gravel removed, even beyond the stakes, for one cannot be estopped by reason of receiving that which belongs to him, where he is entitled to it without estoppel or ratification, besides it does not appear that in the computation of the gravel taken, any account was taken beyond the line of stakes, or that appellant received anything for gravel taken beyond the line of stakes, if it was so taken or paid for. *Smith* v. *Kidd* (1877), 68 N. Y. 130, 23 Am. Rep. 157; *Elliott* v. *Sackett* (1883), 108 U. S. 132, 2 Sup. Ct. 375, 27 L. Ed. 678; *Drury* v. *Hayden* (1884), 111 U. S. 223, 4 Sup. Ct. 405, 28 L. Ed. 408; *Bruce* v. *Bruce* (1891), 95 Ala. 563, 11 South. 197.

In view of the state of the record, and the facts disclosed by it, as herein shown, we think justice requires that a new trial be granted. The judgment is reversed, with instructions to the court below to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 96 N. E. 462. See, also, under (1) 1 Cyc. 785; 33 Am. St. 446; 68 L. R. A. 673; (2, 3) 6 Cyc. 720; (4, 5) 9 Cyc. 384; (6) 1 Cyc. 783; (8) 1 Cyc. 785; 5 Ann. Cas. 219; 10 Ann. Cas. 77; (9) 16 Cyc. 788. As to the liability of a railroad company in constructing its roadway, for removal of lateral support to adjoining property, see 21 L. R. A. (N. S.) 318. As to the liability of an employer for injury by independent contractor to lateral support, see 65 L. R. A. 849.